[No. F017238. Fifth Dist. Mar. 11, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK ANTHONY GROOMES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I. C. through II. D.*

COUNSEL

Haden & Dawson, Betty L. Dawson and Robert T. Haden for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley A. Nelson and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THAXTER, J.—Appellant Mark Anthony Groomes pleaded nolo contendere to one count of lewd and lascivious conduct upon a child under the age of 14 years, a violation of Penal Code[1] section 288, subdivision (a). He also admitted an enhancement allegation that he had substantial sexual conduct with the victim, who was under the age of 11 years within the meaning of section 1203.066, subdivision (a)(8). In light of his plea, another charge was dismissed with a *Harvey*[2] waiver and another enhancement allegation was stricken.

Appellant was sentenced on November 26, 1991. The court denied appellant's request for probation and imposed the midterm of six years. He raises only sentencing issues on appeal. We affirm.

FACTS

On May 18, 1991, the victim, seven-year-old Matthew W., attended the wedding of a relative with his parents and his sister. The wedding reception

---

[1] All statutory references are to the Penal Code unless otherwise indicated.
[2] *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

was held across the street from a park. Matthew and his younger sister went to the park to play on the playground equipment. Appellant, who also attended the wedding and reception, followed the two children to the park and began to help them on and off the equipment.

At approximately 8:00 or 8:30 p.m., close to dusk, a firefighter on duty at the station next to the park looked out the window and saw appellant touch the children inappropriately. He stopped and watched more closely. He saw Matthew go into the public bathroom and saw appellant follow him. Suspecting foul play, the firefighter grabbed a flashlight and ran to the bathroom, which was dark. When he entered, his flashlight illuminated appellant orally copulating Matthew.

The firefighter yelled at appellant and then walked with appellant and Matthew back to the reception. Appellant walked into the nearby orchard where he was later found by another wedding guest. The firefighter returned Matthew to his mother and told her what he had seen. Law enforcement was called and appellant was arrested. According to appellant, he had been drinking heavily for several days prior to and at the reception.

## DISCUSSION

Appellant challenges the denial of probation and the imposition of the middle term. ■ It is well established that the trial court has broad discretion when it comes to sentencing. (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237].) Likewise, the sentencing court has broad discretion to grant or deny probation except when otherwise limited by statute, and a decision denying probation will be reversed only upon a clear showing that the court exercised its discretion in an arbitrary or capricious manner. (*People* v. *Edwards* (1976) 18 Cal.3d 796, 807 [135 Cal.Rptr. 411].)

## I. DENIAL OF PROBATION

When it sentenced appellant, the trial court denied his request for probation, expressly stating alternative bases for its denial. First, the court concluded that appellant was statutorily ineligible for probation under section 1203.066, subdivision (a)(8) and the court declined to make the findings required by section 1203.066, subdivision (c)(1) and (2) to bring appellant within a statutory exception. Second, the court stated that even if appellant were eligible for probation, a grant of probation was not appropriate in this case. The court impliedly denied appellant's request for appointment of a psychiatrist or psychologist to examine appellant and report on his mental condition pursuant to section 288.1.

Appellant contends the trial court erred when it found him statutorily ineligible for probation and then abused its discretion in two respects when it denied his request for probation. First, appellant contends the trial court should have made a referral for a mental evaluation pursuant to section 288.1. Second, he contends the trial court failed to state adequate reasons for the denial. We will conclude that the court did not err in finding appellant statutorily ineligible and it did not abuse its discretion in denying the request for a section 288.1 referral. Because of those conclusions, we will not reach appellant's additional claim that the court's stated reasons for denying probation were inadequate.

A. *Governing Statutory Provisions*

Section 1203.066 provides in part as follows:

"(a) Notwithstanding Section 1203, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for, any of the following persons:

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(8) A person who in violating Section 288 or 288.5 has substantial sexual conduct with a victim under the age of 11 years.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) Paragraphs (7), (8), (9), and (10) of subdivision (a) shall not apply when the court makes all of the following findings:

"(1) The defendant is the victim's natural parent, adoptive parent, step-parent, relative, or is a member of the victim's household who has lived in the household.

"(2) Imprisonment of the defendant is not in the best interest of the child.

"(3) Rehabilitation of the defendant is feasible in a recognized treatment program designed to deal with child molestation, and if the defendant is to remain in the household, a program that is specifically designed to deal with molestation within the family.

"(4) There is no threat of physical harm to the child victim if there is no imprisonment. . . ."

 Thus the Legislature has declared that imprisonment is the normal sentence if a defendant has engaged in substantial sexual conduct with a

child under the age of 11 years, as did appellant. Only when a defendant can establish he or she meets *all* the criteria of subdivision (c) of section 1203.066 can probation be ordered. (*People* v. *McLaughlin* (1988) 203 Cal.App.3d 1037, 1039 [250 Cal.Rptr. 382].) This court has previously held that a defendant has the burden to present evidence showing that he is entitled to consideration for probation under subdivision (c) of section 1203.066. (*People* v. *Lammey* (1989) 216 Cal.App.3d 92, 98 [264 Cal.Rptr. 569].)

Appellant claimed below and on appeal that he is a "relative" of the victim within the meaning of section 1203.066, subdivision (c)(1). The court expressly found to the contrary. The court further stated that it could not find that imprisonment of appellant was not in the victim's best interest, as required by subdivision (c)(2). Thus, because two of the criteria of subdivision (c) were not met, the court concluded appellant was statutorily ineligible for probation. The court did not discuss or make any findings on the criteria of paragraphs (3) and (4) of subdivision (c).

Section 1203.066 was enacted in 1981 upon passage of the Roberti-Imbrecht-Rains-Goggin Child Sexual Abuse Prevention Act (Stats. 1981, ch. 1064, §§ 1-6, pp. 4093-4096). In *People* v. *Jeffers* (1987) 43 Cal.3d 984 [239 Cal.Rptr. 886, 741 P.2d 1127], the Supreme Court examined and extensively discussed the act's legislative history. The court referred to testimony before the Joint Committee for Revision of the Penal Code (1979-1980 Reg. Sess.) (hereafter Joint Committee) on the subject of child sexual abuse. The court noted that several witnesses distinguished pedophile offenders from those characterized as intrafamilial regressive offenders. (See *People* v. *Jeffers,* *supra,* at pp. 993-996.) The Joint Committee was told that attempts at rehabilitating pedophile offenders had not been successful, and mandatory prison terms were needed. On the other hand, attempts at rehabilitating regressive offenders, incestuous or intrafamily offenders, had been successful. In addition to successful rehabilitation programs, there were other reasons why mandatory prison terms for regressive offenders are not desirable. Witnesses and victims were less likely to testify against close family members or household members and risk destruction of the family unit. As the court in *Jeffers* recognized:

"If an intrafamily molester is imprisoned there could be a loss of financial support for the family, the victim could be blamed by other family members, and the victim's mother might abandon the victim in favor of the molester. If a prison sentence is mandatory, there could also be a reluctance of prosecuting authorities to file charges, knowing the consequences for the family. The authorities might prefer to treat the problem as a juvenile or

family law matter rather than as a criminal matter, even though criminal prosecution, without a mandatory prison term, would be preferable. ([Hgs. on Child Molestation Legislation] Hg. of Apr. 24, 1981, pp. 56-57.) Effective rehabilitation is more difficult in prison because the other family members cannot participate. (*Id.* at pp. 60-61.)" (*People* v. *Jeffers, supra,* 43 Cal.3d at p. 995, fn. omitted.)

Throughout the hearing and the legislative process, the legislators had difficulty formulating a legal definition of intrafamily members. As the *Jeffers* opinion reports, there were several drafts of subsection (c)(1) considered. Two of the early drafts were: "The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the household for a substantial period of time but not less than one continuous year, while assuming the role as parent" and "The defendant is a member of the victim's immediate family including parent, grandparent, aunt, uncle, brother or sister, or is a step-parent, adopted parent, or has been living in the household for a substantial period of time but not less than one continuous year, while assuming the role as a parent." Both of these were drafted by the Assembly. The language of the statute as passed was drafted by conference committee. (*People* v. *Jeffers, supra,* 43 Cal.3d at p. 996.)

In *Jeffers* the court was concerned with that portion of section 1203.066, subdivision (c)(1) which applies to a defendant who "is a member of the victim's household who has lived in the household." Specifically, the question was whether the verb "is" referred to the time of the offense or the time of sentencing. Finding the provision ambiguous, the court relied on various principles of statutory construction and concluded that a defendant who was a member of the victim's household at the time of the offense met the criterion of subdivision (c)(1). (*People* v. *Jeffers, supra,* 43 Cal.3d at pp. 997-1000.)

### B. *Appellant's Status as a Relative of Matthew*

 The record is far from clear in showing a relationship between appellant and Matthew. In his written memorandum of points and authorities submitted for the sentencing hearing, appellant stated that "[a]t the Preliminary Hearing the victim's mother testified that Defendant's wife was a third cousin to the victim." That statement is clearly erroneous. The preliminary hearing transcript reveals that Matthew's mother gave the following testimony:

"Q What would the relationship be of the woman who was married to your son Matthew?

"A Third cousin.

" . . . . . . . . . . . . . . . . . . . . . . .

"Q BY MS. CARLSON: You said the woman that got married that day is your cousin?

"A Yes.

"Q Which cousin?

"A Second.

" . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: Who did she marry?

"A Darren Shelton."

This testimony showed that Matthew and his mother were cousins of the woman whose wedding they attended before the molestation incident. Neither it nor any other evidence at the preliminary hearing revealed any relationship between *appellant* and Matthew.

By referring to the probation officer's report and letters attached to it we can surmise a possible line of relationship. In a letter he wrote to the court, appellant described the groom in the wedding he attended on the day of the incident as "my brother-in-law." That term suggests the groom was either the husband of appellant's sister or the brother of appellant's wife. If the former meaning was intended, appellant and the bride were siblings and appellant was related by blood to Matthew. Nothing in the record supports that construction, however. Instead, appellant's letter further refers to Matthew and his sister as "cousins to my wife." If appellant were related by blood to Matthew, we assume he would have stated so.

In addition, the probation officer's report reveals that appellant's wife's maiden name was Shelton. That information supports the inference that the groom (Darren Shelton) was her brother and thus appellant's brother-in-law. In that case, there was no blood relationship between either appellant or his wife and Matthew. The only possible relationship then would be that appellant's wife's brother was married to Matthew's distant cousin.

Appellant does not attempt to clarify this issue in this court. Instead, he refers only to a statement made by the prosecutor during the sentencing hearing: ". . . [Matthew's father] tells me he is the third cousin to the Defendant's wife, which would make his son fourth cousin to the Defendant's wife."

This statement suggests that the claimed line of relationship was through Matthew's father, not his mother, to appellant's wife.

In any event, the line of relationship from appellant to Matthew is, at best, gossamerlike. Appellant claims his wife is the third cousin of Matthew's father. ■ Third cousins are the children of second cousins and grandchildren of first cousins, meaning that their closest common ancestor is a great-great-grandparent. (See Webster's New Internat. Dict.` (3d ed. 1986) pp. 523-524; Cal. Decedent Estate Practice (Cont.Ed.Bar 1986) § 7.82, pp. 7-65, 7-66.) ■ Matthew and appellant's wife, under that interpretation, would be third cousins once removed. According to the table of consanguinity, third cousins once removed are nine degrees of relationship distant from each other. (*Ibid.*) Matthew and appellant would be third cousins-in-law, once removed.

The Legislature did not define or limit the word "relative" as it appears in section 1203.066, subdivision (c)(1). ■ The dictionary definition of a "relative" is "a person connected with another by blood or affinity; *esp.*: one allied by blood." (Webster's New Internat. Dict., *op. cit. supra*, p. 1916; see also Black's Law Dict. (5th ed. 1979) p. 1158.) ■ Under the broadest definition, appellant is a "relative" of the victim. In construing a statute, however, courts are to give words "the meaning they bear in ordinary use." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) We doubt that the ordinary meaning of "relative," in common usage, includes all persons linked by blood or marriage no matter how attenuated the link. In fact, one court has suggested that the "usual" meaning does not include persons related by marriage. (*Hartford Acc. & Indem. Co.* v. *Goossen* (1978) 84 Cal.App.3d 649, 654 [148 Cal.Rptr. 784].)

Only one court has dealt with the term "relative" in section 1203.066, subdivision (c)(1). Without discussion or analysis the court in *People* v. *Gutierrez* (1987) 195 Cal.App.3d 881 [241 Cal.Rptr. 180] held that "[b]y any definition a first cousin is a 'relative.'" (*Id.* at p. 883.) Assuming that the *Gutierrez* decision is correct, it is no authority that persons in more distant relationships are included in the statute.

It is apparent from the legislative history that the intent was not to protect all those related by affinity or consanguinity, but to protect those who hold a close relationship to the child such that if they were imprisoned, the child victim would likely be at risk of harm from further emotional trauma.

The other persons identified in section 1203.066, subdivision (c)(1), ("natural parent, adoptive parent, stepparent, . . . member of the victim's

household who has lived in the household") can reasonably be expected to have a close emotional relationship with the victim or other members of the victim's immediate family. The same is not true, however, as to any other "relative" if the term is applied to all persons remotely related to the victim by blood or marriage. ▪ Statutory provisions relating to the same subject matter should be harmonized, when possible. (*Lungren* v. *Deukmejian, supra,* 45 Cal.3d at p. 735.) ▪ Giving "relative" its most expansive construction, as appellant urges, appears inconsistent with the Legislature's designation of other, narrowly defined relationships in the same sentence.

The facts of this case demonstrate the "mischief or absurdity" (see *People* v. *Jeffers, supra,* 43 Cal.3d at pp. 998-999) which might result if courts do not construe "relative" as having some limitation. Matthew testified at the preliminary hearing that before the molestation he did not know appellant. At the sentencing hearing the prosecutor told the court, without objection or contradiction, that Matthew's mother said that Matthew and appellant may have only seen each other once, if ever, before the day of the molestation. Considering appellant as eligible for probation because of the incidental fact that his wife was distantly related to Matthew thwarts the primary legislative objective behind section 1203.066.

We will not attempt to determine exactly where the line should be drawn between those who are includable as a "relative" under the statute and those who are not. As a general policy matter that task is better left to the Legislature. We are concerned only with this case, involving a specific state of facts. It is sufficient for us to hold that appellant, whose only relationship to Matthew was by marriage to Matthew's distant cousin, was not a "relative" within the meaning of section 1203.066, subdivision (c)(1). The trial court did not err in so finding.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . .

II. *Selection of Middle Term** .

. . . . . . . . . . . . . . . . . . . . . . .

*See footnote *ante*, page 84.

## DISPOSITION

Judgment affirmed.

Dibiaso, Acting P. J., and Harris, J., concurred.