[No. S092179. Aug. 12, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES BERT WUTZKE, Defendant and Appellant.

924

**COUNSEL**

Cynthia M. Sorman and Diane Nichols, under appointments by the Supreme Court; and Handy Horiye, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez, Meagan J. Beale and Crystal L. Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAXTER, J.**—James Bert Wutzke (defendant) was convicted of sexually molesting the young granddaughters of the woman with whom he lived for many years. Though he claims a grandfatherly bond with the victims, he has no blood, legal, or residential connection with them. The issue is whether, under pertinent Penal Code[1] provisions, defendant qualifies as a "relative" of the victims, and may thus avoid the mandatory 15-year-to-life prison sentence otherwise applicable to his crimes. Our answer is "no."

---

[1] All unlabeled statutory references will be to the Penal Code.

By a complicated intersection of the "One Strike" law (§ 667.61) and the statute restricting probation eligibility in lewd conduct cases (§ 1203.066), a person convicted of lewd conduct (§ 288) against multiple underage victims can both qualify for probation and avoid a mandatory indeterminate life term only if, among other things, he is a "relative" of the victim, or is "a member of the victim's household who has lived in the victim's household." (§ 1203.066, subd. (c)(1) (section 1203.066(c)(1).)[2] Defendant admits he is not a "household member" because he does not satisfy the statutory requirement of having lived with the victims. (*People v. Jeffers* (1987) 43 Cal.3d 984, 991-992 [239 Cal.Rptr. 886, 741 P.2d 1127] (*Jeffers*).) He therefore claims exemption from One Strike sentencing treatment, and possible eligibility for probation, as a "relative" under section 1203.066(c)(1).

The trial court rejected this claim and imposed a One Strike sentence. The Court of Appeal reversed and ordered resentencing on the ground defendant is a "relative" as a matter of law.

As we will explain, expanding the definition of a "relative" to include molesters who claim nothing more than an emotional bond with the victim defies common usage, and contravenes the history of the applicable sentencing schemes. Such a construction of "relative" in section 1203.066(c)(1) would also swallow the adjacent "household member" provision, which was clearly intended as the catchall for "nontraditional and quasi-familial" ties. (*Jeffers, supra*, 43 Cal.3d 984, 992.) We conclude the Court of Appeal erred in analyzing the relevant sentencing statutes, and will reverse the judgment on this ground.

## I. FACTS

There is no dispute over the relevant facts, which primarily concern defendant's relationship with Ruth P. and certain members of her family.

Ruth was a widow with three grown sons, all of whom were married. Each son lived with his wife and children in their own home. Altogether, Ruth had eight grandchildren.

By all accounts, defendant was Ruth's boyfriend. They lived together for almost 20 years, but never married. Defendant had two grown daughters from a prior marriage.

Ruth's children and their families gathered for holidays and special occasions at the large home Ruth and defendant built in Alpine in San Diego

---

[2]This opinion will sometimes use a shorthand reference ("household member") to describe language in section 1203.066(c)(1) concerning "a member of the victim's household who has lived in the victim's household."

County. Ruth's grandchildren also visited there on weekends and during vacations—sometimes alone, and sometimes with siblings and/or cousins. Ruth and defendant bought toys for the grandchildren, and took them on family outings. Ruth's grandchildren called defendant "Grandpa" or "Papa Jim."

This case began when four of Ruth's granddaughters complained to their parents and police that defendant sexually fondled them while they were visiting the Alpine house. Most of the alleged acts consisted of defendant sliding his hands under the victims' clothes and rubbing their breasts on the bare skin. In some instances, defendant also reportedly touched the victims' vaginas. Three of the girls—Natalye, Chelsea, and Jenna—were under age 14 when the complained-of acts occurred. The fourth and oldest victim, Lauren, said she was sexually violated once at age nine, and again when she was 14½ years old.

The operative pleading charged defendant with 14 felony counts of lewd conduct against Natalye, Chelsea, and Jenna (§ 288), and with one misdemeanor count of molesting Lauren (§ 647.6). Each felony count was accompanied by an allegation that defendant qualified for an indeterminate 15-year-to-life term because he committed a One Strike offense against multiple victims. (§ 667.61, subds. (b), (c) & (e).)

Before the case reached the jury, the trial court dismissed six felony counts at the parties' request. Later, when deliberations ended, the jury reached defense verdicts on four felony counts (i.e., three acquittals and one deadlock/dismissal).

The prosecution ultimately obtained five convictions. One conviction involved the misdemeanor molestation of Lauren. The jury also found defendant guilty of four violations of section 288, subdivision (a) (section 288(a))—one against Natalye and three against Chelsea. Defendant has not challenged the sufficiency of the evidence underlying the guilty verdict either on appeal or on review.

In light of related allegations under section 667.61, the One Strike law, the felony lewd conduct convictions meant that such crimes had been pleaded and proven "against more than one victim" (*id.*, subd. (e)(5)). These findings both rendered defendant ineligible for probation (§ 1203.066, subd. (a)(7)) and mandated a One Strike sentence of 15 years to life (§ 667.61 subd. (b)) "unless [he] qualifie[d] for probation" (*id.*, subd. (c)(7)) under subdivision (c) of section 1203.066 (section 1203.066(c)). As we later discuss, section 1203.066(c) contains a narrow exception to the ban on probation for a

multiple-victim molester where, in addition to other requirements, "[t]he defendant is the victim's natural parent, adoptive parent, stepparent, relative, or . . . a member of the victim's household who has lived in the victim's household." (§ 1203.066(c)(1).)

At the sentencing hearing, defendant argued that he satisfied section 1203.066(c) in its entirety, that he was eligible for probation as a result, and that he was therefore exempt from One Strike sentencing treatment under section 667.61, subdivision (c)(7) (section 667.61(c)(7)). Focusing on section 1203.066(c)(1), defendant conceded this provision applies only if the term "relative" is loosely construed. He therefore emphasized evidence portraying him, in his words, as the "functional equivalent" of the victims' paternal grandfather. Defendant also urged the court to exercise any sentencing discretion in favor of probation, noting that he was 60 years old and had no prior criminal record.

Consistent with both the probation report and prosecutorial argument at the hearing, the trial court rejected defendant's construction of section 1203.066(c)(1). As the unmarried partner of someone related by blood to the victim, defendant was not a "relative" in the court's view. The court observed that this conclusion effectively meant that it had no choice under section 667.61(c)(7) but to sentence defendant as a One Strike offender. Thus, while the court expressed doubt that defendant could satisfy the minimum probation-eligibility provisions of section 1203.066(c) in any other respect, it did not decide the question.

However, the trial court rejected the suggestion of both the probation officer and the prosecutor to impose a sentence of 60 years to life, consisting of four consecutive 15-year-to-life terms for each qualifying One Strike conviction. Citing the mitigating factors identified by defendant, the court imposed four indeterminate life terms, but ordered them to run concurrently. Defendant also received a concurrent one-year jail term for his misdemeanor conviction.

Defendant appealed. All four section 288(a) convictions were affirmed. In reaching this result, the Court of Appeal rejected complaints concerning the admissibility of prosecution evidence and the use of certain jury instructions.[3]

However, the Court of Appeal agreed with defendant that the trial court had erred, for purposes of sentencing, in failing to find he was a "relative"

---

[3]The Court of Appeal reversed the section 647.6 misdemeanor conviction involving Lauren on statute of limitations grounds. The Attorney General joined defendant in urging this result on appeal.

within the meaning of section 1203.066(c)(1). The Court of Appeal ruled that defendant was the victims' "relative" as a matter of law, because they shared a close quasi-familial relationship at the time of the crimes. Accordingly, the Court of Appeal vacated the concurrent 15-year-to-life terms and remanded the case for further consideration of defendant's probation eligibility, and his maximum sentence.[4]

Defendant and the People, represented by the Attorney General, each sought review in this court. Defendant challenged his convictions using the same evidentiary and instructional claims rejected on appeal. The Attorney General argued the Court of Appeal had misconstrued "relative" in section 1203.066(c)(1), and sought reinstatement of the One Strike sentence imposed by the trial court. Only the Attorney General's petition for review was granted. We now consider the sentencing question raised therein.

## II. DISCUSSION

Effective November 30, 1994, section 667.61 ensures serious sexual offenders receive long prison sentences whether or not they have any prior convictions. (Stats. 1993-1994, 1st Ex. Sess., ch. 14, § 1, pp. 8570-8572.)[5] According to a general statement of purpose in the legislative history, the targeted group preys on women and children, cannot be cured of its aberrant

---

[4]Having found defendant was the victims' "relative" under section 1203.066(c)(1), the Court of Appeal did not reach his alternative claim that exclusion from the class of offenders covered by the statute denied him equal protection of the law.

[5]Section 667.61 states, in part:

"(a) A person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years . . . .

"(b) Except as provided in subdivision (a), a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years . . . .

"(c) This section shall apply to any of the following offenses: [¶] . . . [¶]

"(7) A violation of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066. [¶] . . . [¶]

"(e) The following circumstances shall apply to the offenses specified in subdivision (c): [¶] . . . [¶]

"(5) The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim. [¶] . . . [¶]

"(g) The term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim. . . .

"(h) Probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person who is subject to punishment under this section for any offense specified in paragraphs (1) to (6), inclusive, of subdivision (c).

impulses, and must be separated from society to prevent reoffense. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 26 (1993-1994 1st Ex. Sess.) as introduced Feb. 2, 1994, pp. 9-10.)

The sex crimes qualifying for One Strike treatment appear in section 667.61, subdivision (c). Almost all of the enumerated crimes involve the use of force or fear (*id.*, subd. (c)(1)-(6)), including forcible lewd conduct committed in violation of section 288, subdivision (b). Probation is prohibited for persons punishable under section 667.61 for any forcible sex offense specified therein. (*Id.*, subd. (h).)

At issue here is the remaining One Strike offense described in section 667.61(c)(7). This provision covers *nonforcible* lewd conduct committed in "violation of subdivision (a) of Section 288, *unless the defendant qualifies for probation under subdivision (c) of Section 1203.066.*" (§ 667.61(c)(7), italics added; see *People v. Mancebo* (2002) 27 Cal.4th 735, 741 & fn. 3 [117 Cal.Rptr.2d 550, 41 P.3d 556].)

Conviction of an enumerated offense alone does not trigger the One Strike law. The People also must plead and prove at least one aggravating circumstance specified in section 667.61, subdivision (d) or (e). (*Id.*, subd. (i); see *People v. Mancebo, supra*, 27 Cal.4th 735, 743-744.) Many of these circumstances reflect the use of violent or predatory means that increase the victim's "vulnerability." (*People v. Palmore* (2000) 79 Cal.App.4th 1290, 1296 [94 Cal.Rptr.2d 784].) Here, however, the jury sustained allegations under section 667.61, subdivision (e)(5), concerning conviction in the present case of a qualifying offense "against more than one victim." The court cannot strike any finding duly made under section 667.61, subdivision (d) or (e). (*Id.*, subd. (f); see *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1277 [67 Cal.Rptr.2d 596].)

The length of the One Strike term depends upon the number and nature of applicable aggravating circumstances. In some cases, conviction of an enumerated offense compels an indeterminate term of 25 years to life in prison. (§ 667.61, subd. (a).) Where, as here, only one circumstance under subdivision (e) of the statute is found, the requisite term is 15 years to life. (*Id.*, subd. (b).)

Moreover, persons convicted of sex crimes against multiple victims within the meaning of section 667.61, subdivision (e)(5) "are among the most

---

"(i) For the penalties provided in this section to apply, the existence of any fact required under subdivision (d) or (e) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."

dangerous" from a legislative standpoint. (*People v. DeSimone* (1998) 62 Cal.App.4th 693, 698 [73 Cal.Rptr.2d 73].) The One Strike scheme therefore contemplates a separate life term for each victim attacked on each separate occasion. (*Id.* at pp. 698-699; see § 667.61, subd. (g); *People v. Murphy* (2001) 25 Cal.4th 136, 153 & fn. 7 [105 Cal.Rptr.2d 387, 19 P.3d 1129], and cases cited.)

Section 667.61's intolerance toward child sexual abuse was foreshadowed by section 1203.066, which requires prison and otherwise limits probation in such cases. Section 1203.066 was enacted in 1981, along with numerous other reforms in the definition and punishment of such crimes. (See Stats. 1981, ch. 1064, §§ 1-6, pp. 4093-4096 (the 1981 Act); *Jeffers, supra,* 43 Cal.3d 984, 986; *Baker v. Superior Court* (1984) 35 Cal.3d 663, 670, fn. 7 [200 Cal.Rptr. 293, 677 P.2d 219].)[6]

---

[6]Section 1203.066 states, in part:

"(a) Notwithstanding Section 1203 or any other law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for, any of the following persons:

"(1) A person who is convicted of violating Section 288 or 288.5 when the act is committed by the use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.

"(2) A person who caused bodily injury on the child victim in committing a violation of Section 288 or 288.5.

"(3) A person who is convicted of a violation of Section 288 or 288.5 and who was a stranger to the child victim or befriended the child victim for the purpose of committing an act in violation of Section 288 or 288.5, unless the defendant honestly and reasonably believed the victim was 14 years of age or older.

"(4) A person who used a weapon during the commission of a violation of Section 288 or 288.5.

"(5) A person who is convicted of committing a violation of Section 288 or 288.5 and who has been previously convicted of a violation of [specified sexual offenses] . . . .

"(6) A person who violated Section 288 or 288.5 while kidnapping the child victim in violation of Section 207, 209, or 209.5.

"(7) A person who is convicted of committing a violation of Section 288 or 288.5 against more than one victim.

"(8) A person who, in violating Section 288 or 288.5, has substantial sexual conduct with a victim who is under 14 years of age.

"(9) A person who, in violating Section 288 or 288.5, used obscene matter, as defined in Section 311 . . . . [¶] . . . [¶]

"(c) Paragraphs (7), (8), and (9) of subdivision (a) shall not apply when the court makes all of the following findings:

"(1) The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the victim's household.

"(2) A grant of probation to the defendant is in the best interest of the child.

"(3) Rehabilitation of the defendant is feasible, the defendant is amenable to undergoing treatment, and the defendant is placed in a recognized treatment program designed to deal

As pertinent here, section 1203.066, subdivision (a) states that "probation shall not be granted to" persons convicted of violating section 288, the lewd conduct statute, under a wide range of circumstances. Such circumstances include commission of the crime against more than one victim. (§ 1203.066, subd. (a)(7).)

Imprisonment is required, and probation ineligibility "is absolute," for many section 288 violations described in section 1203.066, subdivision (a). (*Jeffers, supra,* 43 Cal.3d 984, 987.) However, as to some of the covered crimes, including those involving multiple victims under section 1203.066, subdivision (a)(7), the ban on probation does not apply under a "limited exception" in subdivision (c) of the same statute. (*People v. Manners* (1986) 180 Cal.App.3d 826, 833 [225 Cal.Rptr. 798].) Consistent with the express terms of section 1203.066(c), probation is available as a sentencing choice "[o]nly when a defendant can establish he or she meets *all* [five] criteria" in this provision. (*People v. Groomes* (1993) 14 Cal.App.4th 84, 89 [17 Cal.Rptr.2d 469] (*Groomes*), and cases cited.)

The present case involves the first factor, section 1203.066(c)(1). Distilled, it requires the defendant to prove, and the sentencing court to find, that he either is the victim's "relative," or "is a member of the victim's household who has lived in the victim's household." (*Ibid.*) The four other factors bearing on probation eligibility concern the victim's best interest with respect to probation; the defendant's amenability to treatment and reform; the victim's best interest with respect to any continuing household relationship or other contact with the defendant; and the threat of harm posed by probation. (*Id.,* subd. (c)(2)-(5).)[7]

 Here, as below, there is no dispute that unless defendant is a "relative" under section 1203.066(c)(1), he is ineligible for probation and is subject to a mandatory One Strike sentence of 15 years to life, as imposed by the trial court. We proceed to address that issue.

---

with child molestation immediately after the grant of probation or the suspension of execution or imposition of sentence.

"(4) The defendant is removed from the household of the victim until the court determines that the best interests of the victim would be served by returning the defendant to the household of the victim. . . .

"(5) There is no threat of physical harm to the child victim if probation is granted. The court upon making its findings pursuant to this subdivision is not precluded from sentencing the defendant to jail or prison, but retains the discretion not to do so. The court shall state its reasons on the record for whatever sentence it imposes on the defendant."

[7]Of course, probation is not required where favorable findings under section 1203.066(c) are made. The sentencing court "retains the discretion" to find the defendant unsuitable for probation and to order imprisonment. (*Id.,* subd. (c)(5); see *Jeffers, supra,* 43 Cal.3d 984, 1000; see also *People v. Cicero* (1984) 157 Cal.App.3d 465, 472 [204 Cal.Rptr. 582] [identifying alternative sentencing schemes where probation is denied under § 1203.066].)

At one extreme, defendant asks us to follow the Court of Appeal and to interpret "relative" as including *any* close emotional relationship perceived as familial by the molester and either the victim or other family members, even if the molester does not qualify as a "household member" under section 1203.066(c)(1). At the other extreme, the Attorney General contends that because defendant was not related by blood or marriage to Ruth's granddaughters when the crimes occurred, he is not their "relative" under section 1203.066(c)(1). The Attorney General insists that the disputed term has no other conceivable meaning, and that any inquiry beyond the plain meaning of the statutory language is pointless.

Neither approach is entirely correct. We disagree with the Attorney General that the underlying history sheds no light on the relevant statutory question, and that it should essentially be ignored. (E.g., *Jeffers, supra,* 43 Cal.3d 984, 993-997.) However, we agree with the Attorney General that section 1203.066(c)(1)'s "relative" category does not apply to someone like defendant who lacks any blood, marital, or other legal relationship with the victim, or even with other members of the victim's family.

Common sense suggests the Legislature would not have used the term "relative" in section 1203.066(c)(1) to define relationships along the amorphous lines urged by defendant. *None* of the numerous dictionaries and reference guides we have consulted use "relative" in this manner. In fact, these sources suggest that the word is commonly understood in terms of either a shared bloodline, or various blood-and-marriage formulas similar to what the Attorney General suggests. Thus, Ruth is a "relative" or "relation" of her granddaughters under such a traditional approach, but defendant is not.[8]

As defendant suggests, more progressive dictionary definitions exist. However, they do not help his case. One English-language authority states, for instance, that "relative[s]" are linked not only by "common origin" or "marriage," but also by "*kinship*." (American Heritage Dict. (4th ed. 2000) p. 1473, col. 1, italics added.) The same source describes "kinship" primarily in terms of "*blood, marriage, or adoption,*" and uses "*family* relationship" as an alternative secondary meaning. (*Id.* at p. 966, col. 2, italics added.) The word "family," in turn, triggers several specific meanings, to wit, "*parents and their children*"; persons who share "long-term commitments" and who

---

[8](E.g., Roget's Internat. Thesaurus (6th ed. 2001) p. 417, col. 1; Merriam-Webster's Collegiate Dict. (10th ed. 2000) p. 984, col. 1; Burton, Legal Thesaurus (2d ed. 1992) p. 440, col. 1; XIII Oxford English Dict. (2d ed. 1989) p. 552, col. 1; Roget's II, The New Thesaurus (expanded ed. 1988) p. 815, col. 1; West's Legal Thesaurus/Dict. (special deluxe ed. 1986) p. 644; Webster's New Dict. of Synonyms (1973) p. 675, col. 2; Ballentine's Law Dict. (3d ed. 1969) p. 1083, col. 2; Webster's 3d New Internat. Dict. (1965) p. 1916, col. 2.)

live "in the *same dwelling*"; all members of a "household" living "*under one roof*"; or persons sharing "*common ancestry*" or "lineage." (*Id.* at p. 638, col. 2, italics added.) Defendant has never claimed that he and Ruth's granddaughters are bound along any of these lines.

Legal dictionaries offering expansive definitions of "relative" follow the same pattern, and similarly exclude defendant's relationship with the victims. One such source states that the word "refers to relationship by *blood (consanguinity), marriage (affinity)*, and, with increasing frequency, to relationship by *adoption*." (Mellinkoff's Dict. of American Legal Usage (1992) p. 282, italics added; see *id.* at p. 549.) Another prominent authority offers a similar range of meaning, using both "blood or affinity" and "kinsman" to define "relative." (Black's Law Dict. (7th ed. 1999) p. 1291, col. 2.) The latter source links "affinity" to "[a]ny familial relation resulting from a *marriage*." (*Id.* at p. 59, col. 1, italics added.) "Kinship" requires "*blood, marriage, or adoption*." (*Id.* at p. 875, col. 1, italics added.)

Only a few Court of Appeal decisions have determined whether someone convicted of child sexual abuse is the victim's "relative" independent of any "household member" relationship under section 1203.066(c)(1). Consistent with the legislative history we discuss below, these cases state or imply that the statute applies only where imprisonment of the defendant would essentially destroy the victim's family or otherwise harm the victim. Hence, the Courts of Appeal have not defined "relative" under section 1203.066(c)(1) any more broadly than the traditional dictionary meaning covering persons related by blood or marriage. (*Groomes, supra,* 14 Cal.App.4th 84, 92 [noting that "relative" ordinarily describes persons linked by blood and possibly marriage, but doubting that the concept applies "no matter how attenuated the link"]; *id.* at p. 93 [declining to apply the statute to a defendant who was related by marriage to the victim's distant cousin, and who was a virtual stranger to the victim]; *People v. McLaughlin* (1988) 203 Cal.App.3d 1037, 1039-1040 [250 Cal.Rptr. 382] [applying the statute where the defendant was the brother of the victim's mother and therefore was the victim's uncle]; *People v. Gutierrez* (1987) 195 Cal.App.3d 881, 882-884 [241 Cal.Rptr. 180] [applying the statute where the defendant and victim were first cousins because their mothers were sisters, and where the victim received child care from the defendant's mother in her home].)

When, in other statutes, the Legislature has given special status to quasi-familial relationships, it has done so by use of terms other than "relative," often expressly distinguishing relatives from other forms of quasi-familial association. (E.g., Civ. Code, § 1708.8, subd. (k) [defining actionable physical invasions of privacy against "the plaintiff's family or *significant others*"

(italics added)]; Evid. Code, § 972, subd. (e)(1) [limiting the scope of the spousal testimonial privilege in cases involving a spouse, "child, parent, relative, or *cohabitant*" (italics added)]; Fam. Code, § 6211, subd. (c) [applying domestic violence protections to persons in a "*dating or engagement relationship*" (italics added)]; see *id.*, subds. (a) [same as to "spouse"], (b) [same as to "cohabitant"], (f) [same as to persons "related by consanguinity or affinity within the second degree"]; Pen. Code, § 243, subd. (e)(1) [punishing battery committed against "a spouse, a person with whom the defendant is cohabiting, *a person who is the parent of the defendant's child*, former spouse, *fiancé*, or *fiancée*, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship" (italics added)]; Welf. & Inst. Code, § 362.7 [defining a "*nonrelative extended family member*" in dependency proceedings "as any adult caregiver who has an established familial or mentoring relationship with the child" (italics added)].)

The Legislature could have drafted section 1203.066(c)(1) to expressly include sexual offenders (like defendant) who are housemates or intimate partners of the victim's relative (like Ruth). No such language appears in the statute. Instead, section 1203.066(c)(1) literally requires the defendant *himself* to be the victim's "relative" or to have shared the "victim's household."[9]

Thus, mere use of the word "relative" does not show section 1203.066(c)(1) covers all emotional bonds, however remotely familial. Instead, given its commonly understood range of meaning, "relative" seems to target offenders whose personal relationship with the victim arises from a blood or legal tie. For reasons we now explain, both the legislative history and *Jeffers, supra*, 43 Cal.3d 984, confirm our understanding of the disputed term.[10] These materials contradict the view of the Court of Appeal and defendant that he is the victims' "relative" under section 1203.066(c)(1), as incorporated into the One Strike law by section 667.61(c)(7).

In crafting legislation that ultimately produced section 1203.066 and other provisions of the 1981 Act, lawmakers relied on testimony from police

[9]In arguing that "relative" has no discernable meaning, defendant cites several statutes in different codes using the same word to describe interpersonal relationships. In fact, our research has uncovered scores of these provisions—too many to list here. As defendant observes, statutory references to "relatives" are sometimes unadorned. Other times, the word is accompanied by descriptive language that varies widely from statute to statute. Defendant concedes that because such provisions serve diverse purposes, they have no direct bearing on section 1203.066(c)(1). However, *no* statute of which we are aware appears on its face to define the word "relative" along the vague emotional lines urged by defendant.

[10]Many of the legislative materials we now review were used in *Jeffers, supra*, 43 Cal.3d 984, 993-997. However, having taken a fresh look at the matter, we supplement the present discussion of section 1203.066(c)(1) with information which is especially relevant here, but which *Jeffers, supra*, 43 Cal.3d 984, did not specifically mention.

officers, psychologists, prosecutors, victims, and community leaders concerned with child sexual abuse. The Assembly Committee on Criminal Justice (Assembly Committee) conducted a child molestation hearing on November 12, 1980 (Assembly Hearing). The Joint Committee for Revision of the Penal Code (1981-1982 Reg. Sess.) (Joint Committee) held a child molestation hearing on December 16, 1980, and held more hearings on child molestation legislation on April 10, 1981, and April 24, 1981, respectively (Joint Hearings).

The Assembly and Joint Committees heard that mandatory imprisonment is the best means by which to deter and punish the sexual exploitation of children. According to witnesses, such crimes are typically committed by pedophiles who are "fixated" sexually on children, and who have no interest in sexual partners their own age. (Assembly Hearing, *supra*, p. 82; Joint Hearing of Dec. 16, 1980, *supra*, p. 149.) Concern was expressed that because these offenders are adept at ingratiation and intimidation, their victims do not come forward, and their crimes go unpunished. A consensus emerged that attempts to treat and rehabilitate pedophiles usually fail, and that they habitually reoffend. (Assembly Hearing, *supra*, pp. 22, 46-47, 82-83; Joint Hearing of Dec. 16, 1980, *supra*, pp. 149-151, 210-211.)

However, the Assembly and Joint Committees were urged to consider the special problems posed by some incestuous or intrafamilial offenders. (Joint Hearing of Dec. 16, 1980, *supra*, pp. 31, 151-153, 167-168.) Witnesses agreed that, unlike pedophiles who have an exclusive lifelong attraction to children, some adults with age-appropriate mates "regress" and molest young family members for situational and opportunistic reasons. (Assembly Hearing, *supra*, p. 83.) On the one hand, the testimony indicated that such molesters can successfully reform if they receive both punishment and treatment, particularly where the family supports recovery efforts. (Assembly Hearing, *supra*, pp. 72-75, 83-84, 103-104; Joint Hearing of Dec. 16, 1980, *supra*, pp. 153, 173-177; Joint Hearing of Apr. 24, 1981, *supra*, pp. 33-34.)

On the other hand, lawmakers were told that mandating prison, as opposed to offering jail time and probation, could do more harm than good in some intrafamilial cases. One stated reason was that young victims often feel intense guilt—albeit irrationally so—for implicating the molester, for thereby bringing shame on the family, and for possibly causing the household to dissolve. Witnesses further explained that loved ones who are emotionally and/or financially dependent on the molester may blame or even abandon the victim, particularly a mother risking loss of the molester as a life partner. (Joint Hearing of Dec. 16, 1980, *supra*, pp. 72, 159-160; Joint

Hearing of Apr. 10, 1981, *supra*, pp. 29, 31-32, 38, 47; Joint Hearing of Apr. 24, 1981, *supra*, pp. 8-9, 22, 59-60.) Thus, concern was expressed that mandatory imprisonment might deter victims and their families from reporting the crime, from cooperating with law enforcement officials, and from participating in counseling that could repair damaged relationships. (Joint Hearing of Dec. 16, 1980, *supra*, pp. 156, 160-161, 164-165; Joint Hearing of Apr. 10, 1981, *supra*, pp. 32-33, 48-49; Joint Hearing of Apr. 24, 1981, *supra*, pp. 47, 60-61.)

During the hearings, both witnesses and lawmakers questioned whether mandatory imprisonment was appropriate for an incestuous father or stepfather. (Assembly Hearing, *supra*, pp. 71-72; Joint Hearing of Dec. 16, 1980, *supra*, p. 163; Joint Hearing of Apr. 10, 1981, *supra*, p. 29; Joint Hearing of Apr. 24, 1981, *supra*, pp. 25, 30.) Examples of other intrafamilial molesters who might warrant special consideration were brothers and uncles (Joint Hearing of Apr. 10, 1981, *supra*, p. 30), grandfathers (Assembly Hearing, p. 93), and cousins (Joint Hearing of Apr. 24, 1981, *supra*, p. 35).

Finally, the Assembly and Joint Committees explored a so-called "gray area" in which the molester has a "close relationship[ ]" with his young victim, but does not occupy a clearly incestuous or familial role. (Joint Hearing of Dec. 16, 1980, *supra*, p. 162.) This theoretically limitless group was said to include teachers, babysitters, and doctors (*ibid.*); any next-door neighbor or boyfriend of the victim's mother who acts as a "father figure" to the child (Joint Hearing of Apr. 10, 1981, *supra*, p. 51; Joint Hearing of Apr. 24, 1981, *supra*, p. 32); and "*surrogate grandparents*[,] *mainly grandfathers*" who have "attached" themselves to families with young children (Joint Hearing of Dec. 16, 1980, *supra*, p. 168, italics added). While some witnesses favored treatment rather than prison in such cases, the notion of mandatory imprisonment for molesters in these more ambiguous categories did not trigger the same level of concern as it did with family or household offenders.

Indeed, in drafting Senate Bill No. 586 (1981-1982 Reg. Sess.), which enacted section 1203.066, the Legislature worked to limit the number of offenders who could avoid mandatory imprisonment based solely on a quasi-familial bond with the victim. The "household member" language ultimately included in section 1203.066(c)(1) was the focus of this concern. For instance, the broadest proposed formulation of such language appeared in the bill as passed by the Senate and sent to the Assembly. This version authorized probation for parents, relatives, and members of the victim's household; however, there was no express requirement that a nonrelative household member have lived with the victim. (Sen. Bill No. 586 (1981-1982 Reg. Sess.) as amended May 4, 1981.)

Once Senate Bill No. 586 arrived in the Assembly, various changes were proposed to further restrict the definition of a nonrelative household member. One amendment would have required such an offender to have lived in the victim's household for at least one continuous year while assuming the role of a parent. (Assem. Amend. to Sen. Bill No. 586 (1981-1982 Reg. Sess.) Aug. 10, 1981.) Another amendment would have retained the one-year residence requirement, and would have described eligible offenders as members of the victim's "immediate family," rather than as members of the same "household." (Assem. Amend. to Sen. Bill No. 586 (1981-1982 Reg. Sess.) Aug. 25, 1981.) The bill passed the Assembly in the latter form (4 Assem. J. (1981-1982 Reg. Sess.) pp. 7829-7830), but was rejected by the Senate (4 Sen. J. (1981-1982 Reg. Sess.) p. 6337). The final version of section 1203.066(c)(1) is the product of a conference committee compromise between the Senate and Assembly versions. (See 4 Sen. J. (1981-1982 Reg. Sess.) pp. 6612-6613; 5 Assem. J. (1981-1982 Reg. Sess.) p. 8539.)[11]

We analyzed these events in *Jeffers, supra*, 43 Cal.3d 984. For reasons we now explain, *Jeffers* makes clear that it is the statute's nonrelative "household member" category—not the "relative" category—that defendant must but cannot satisfy in order to invoke section 1203.066(c)(1), and to escape One Strike sentencing under section 667.61(c)(7).

In *Jeffers, supra*, 43 Cal.3d 984, 988-990, the victim was a young girl who was being raised by her mother and grandmother. The victim and her family were close friends with the defendant, his wife, and his children. When the victim was between five and seven years old, the two families lived together on three separate occasions. The defendant became a father figure to the victim during this period, teaching her to bicycle and swim. After the two families shared living quarters for the last time, they agreed that the defendant would sometimes babysit the victim after school. It was during the latter period that the defendant molested the victim, who was then about eight years old. The girl's mother discovered the crimes, urged authorities to prosecute, and ended all contact with the defendant.

The defendant in *Jeffers* was convicted of several lewd conduct violations under section 288(a). The jury also found true allegations that he and the

---

[11]We have summarized this legislative compromise as follows: "The language of [section 1203.066(c)(1)] is narrower than the initial Senate version but broader than the version first passed by the Assembly . . . . The requirement that the defendant have lived in the household, not found in the original Senate version, was apparently intended to exclude neighbors, teachers, babysitters, and others who might, on the basis of a close relationship with the victim, claim to be household members. On the other hand, the final version does not require that the defendant have lived in the household for a substantial period of time or that he have done so 'while assuming the role as parent' and it rejected the phrase 'member of the victim's immediate family' in favor of the earlier version, 'member of the victim's household.' " (*Jeffers, supra*, 43 Cal.3d 984, 996-997.)

victim engaged in "substantial sexual conduct" under section 1203.066, subdivision (a)(8). Such findings meant that the defendant was probation eligible only if he satisfied section 1203.066(c)(1). (*Jeffers, supra,* 43 Cal.3d 984, 988.)

In seeking probation, the defendant in *Jeffers* claimed that, as a surrogate father who had lived with the victim, he qualified as a "household member" under section 1203.066(c)(1). The trial court denied the request, giving no indication as to how it interpreted or applied the statutory language. The judgment of imprisonment was subsequently affirmed on appeal. In so doing, the Court of Appeal essentially ignored the relationship between the defendant and victim before and during the time of the crimes, and focused on their estrangement at the time of sentencing. (*Jeffers, supra,* 43 Cal.3d 984, 990-991.)

This court rejected the Court of Appeal's approach and ordered resentencing. (*Jeffers, supra,* 43 Cal.3d at pp. 1000-1001.) In the process, our opinion in *Jeffers* construed section 1203.066(c)(1) and the "household member" clause as follows.

■ *Jeffers* observed that in order to qualify as a "household member," a defendant must meet two literal statutory requirements, namely, that he *"is* a member of the victim's household," and that he *"has lived* in the [same] household." (§ 1203.066(c)(1), italics added.) We determined that the class of persons who are "member[s]" of the household is broader than the class of persons who have "lived" in the household; otherwise, the latter requirement would be surplusage. (*Jeffers, supra,* 43 Cal.3d at p. 992) *Jeffers* also found that the time at which the defendant lived in the household may precede the time at which he is a "household member." (*Id.* at p. 993.) Based on the statutory history and purpose, the circumstances existing at the time of the crime (rather than at the time of sentencing) are of primary concern. (*Id.* at pp. 997-998.)

Critical here is the manner in which *Jeffers* characterized the substance of the "household member" relationship. " '[L]iving in the household' denotes physical presence under a common roof whereas being a 'member of the . . . household' denotes a quality of relationship. Being a household member refers not only to the relationships among members of a family, but also to *the bonds which may be found among unrelated persons adopting non-traditional and quasi-familial living arrangements.* Thus a member of the victim's household is one who has this quality of relationship with the victim." (*Jeffers, supra,* 43 Cal.3d 984, 992, italics added.) In other words, this court found that the disputed provision functioned as " 'a *catch-all*

category' " covering nonrelative members of the victim's " 'extended family.' " (Id. at p. 991, italics added.)

In light of Jeffers, and the history discussed both there and here, we draw the following conclusions about section 1203.066(c)(1). First, the statute applies to a molester claiming to be a surrogate family member only if he is "a member of the victim's household who has lived in the victim's household." (Ibid.) The Legislature has determined that except where both residential and emotional relationships exist, a nonrelative molester—like a "surrogate grandparent[ ]"—is not in the same position as a relative, such that mandatory imprisonment risks the same degree of disruption and harm. (Joint Hearing of Dec. 16, 1980, supra, p. 168.) Thus, the statute preserves "nontraditional and quasi-familial" relationships (Jeffers, supra, 43 Cal.3d 984, 992), but only insofar as the molester fits the definition of a "household member" under section 1203.066(c)(1).

Second, the existence of such a catchall category, imposing specific limitations on nonrelative "household members," strongly suggests section 1203.066(c)(1) adheres to the boundaries that commonly define "relatives." As we have seen, section 1203.066(c)(1) imposes no express residency requirement on the victim's "natural parent, adoptive parent, stepparent, [or] relative." (E.g., People v. Gutierrez, supra, 195 Cal.App.3d 881, 883-884.) It would be unreasonable to infer that a defendant who is not a "household member," because he has never lived with the victim, can nonetheless invoke the statute as a "relative," even though the pair also shares no blood or legal relationship.

In particular, defendant's contrary construction would stretch the meaning of "relative" beyond the definition of "household member." The former would effectively become the statutory catchall provision at the expense of the latter, contrary to both Jeffers, supra, 43 Cal.3d 984, and the clear legislative intent. Also, to find "relative" status under section 1203.066(c)(1) where no residential, blood, or legal relationship exists would risk benefiting molesters who have no personal relationship with their victims. It is inconceivable the Legislature intended that result. (Cf. Groomes, supra, 14 Cal.App.4th 84, 92-93 [finding that a defendant who did not know the victim before the molestation was not a "relative" under § 1203.066(c)(1), even though the defendant was married to the victim's distant blood relative].) Thus, we find that "relative" carries no broader range of meaning in section 1203.066(c)(1) than in common usage, and that the term does not describe molesters sharing only "quasi-familial" bonds with their victims. (Jeffers, supra, 43 Cal.3d at p. 992.)

These conclusions are consistent with themes expressed by the Legislature when drafting section 667.61, the One Strike law, under which defendant was sentenced. As first introduced in the Senate, the measure would have amended section 288 to impose life imprisonment without the possibility of parole (LWOP) on persons convicted of substantial sexual conduct with a child under age 14. The same version of the bill also proposed repealing section 1203.066, and otherwise prohibiting probation for anyone convicted of violating section 288. (Sen. Bill No. 26X (1993-1994 1st Ex. Sess.) as introduced Feb. 2, 1994, §§ 5, 11, 12.)

However, subsequent versions of the same bill abandoned the LWOP proposal in favor of indeterminate life terms of the sort ultimately included in section 667.61. Lawmakers also decided that section 1203.066 should be retained, and that no meaningful change in subdivision (c)(1) would be made. (Assem. Amend. to Sen. Bill No. 26X (1993-1994 1st Ex. Sess.) Aug. 22, 1994, §§ 1, 3.) The latter decision apparently stemmed from continuing concern that long mandatory prison terms would "impede the prosecution" of intrafamilial molesters by making victims and loved ones reluctant to report the crimes and to cooperate with authorities. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 26X (1993-1994 1st Ex. Sess.) as amended May 4, 1994, p. 12.) The statutory analysis in *Jeffers, supra,* 43 Cal.3d 984, was summarized and approved in this regard.

These events further support our conclusion that defendant is not a "relative" under section 1203.066(c)(1). It seems unlikely that lawmakers, in deciding to forgo both LWOP and an outright ban on probation, would have conditioned One Strike sentencing on section 1203.066(c)(1) if the latter statute applied in the manner urged by defendant. To interpret "relative" as a sizeable One Strike loophole benefiting almost any molester who betrays a position of trust is contrary to the purpose of both sentencing schemes. As noted, section 667.61 and section 1203.066 each assume that convicted child molesters are dangerous and generally deserving of harsh punishment.

Moreover, nothing in the history of section 667.61 suggests that courts have too narrowly applied section 1203.066(c)(1). Indeed, lawmakers approved *Jeffers, supra,* 43 Cal.3d 984, which held that section 1203.066(c)(1) covers only those quasi-familial relationships involving a shared residential history. Defendant's "relative" claim essentially ignores the limits of the statute and the purpose of the "household member" provision as described in *Jeffers*.

Defendant counters by arguing that his expansive view of the term "relative" in section 1203.066(c)(1) is necessary to avoid absurd results.

Otherwise, he contends, sexual offenders who never knew their young victims could avoid One Strike sentencing under section 667.61(c)(7) and could invoke section 1203.066(c)(1), based solely on fortuitous blood or legal ties. Defendant claims such a scenario would not further the statutory aims of minimizing emotional trauma to victims, salvaging familial and quasi-familial relationships, and offering the chance for treatment to molesters most likely to reform.

Preliminarily, leniency is not guaranteed for a "relative" or nonrelative "household member" under section 1203.066(c)(1). Such defendants are eligible for probation only if "all" of the findings required by section 1203.066(c) are made. (*Ibid.*) Even then, the trial court "is not precluded from sentencing the defendant to jail or *prison*." (*Id.*, subd. (c)(5), italics added.) Existing case law discourages lenient sentencing treatment for molesters who lack a "close emotional relationship" with the child, and who are only "remotely related . . . by blood or marriage." (*Groomes, supra,* 14 Cal.App.4th 84, 93.)

In any event, fixing the range of punishment for crime rests on policy determinations that the legislative branch is specially empowered to make. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 552 [117 Cal.Rptr.2d 168, 41 P.3d 3].) Lawmakers are entitled to sanction criminal conduct more or less severely based on the surrounding circumstances, including the dangerousness of the offender, the vulnerability of the victim, and the nature of the parties' relationship. (See, e.g., *People v. Thompson* (1988) 205 Cal.App.3d 871, 876-884 [252 Cal.Rptr. 698] [applying statutory ban on probation to a defendant who befriended a child in order to sexually abuse him]; *People v. Acevedo* (1985) 166 Cal.App.3d 196, 204-205 [212 Cal.Rptr. 328] [applying statutory ban on probation for forcible rape against a nonspouse].)

Here, the Legislature could reasonably encourage young victims and other loved ones to break their silence concerning intrafamilial or household abuse by not requiring all offenders to be imprisoned for the rest of their natural lives. The pressures that might otherwise cause a victim to shun disclosure— damage to the family name, loss of the family breadwinner, and disruption in living arrangements and marital relationships—are either missing or muted where the defendant is neither a "relative" nor a "household member" under section 1203.066(c)(1). In addition, surrogate or quasi-relatives are in a unique position to "attach[ ]" themselves to families with young children for an improper sexual purpose. (Joint Hearing of Dec. 16, 1980, *supra*, p. 168.) Lawmakers could conclude that such an individual is more likely to be

dangerous *because* no blood, marital, or other legal connection to the victim exists. Thus, we see nothing irrational in the legislative decision to exclude defendant from section 1203.066(c)(1), and to subject him to One Strike sentencing under section 667.61, notwithstanding any grandfatherly bond with the victims.

Defendant's final claim is that failure to apply section 1203.066(c)(1) to all close quasi-familial relationships violates his equal protection rights under the federal and state Constitutions. Here, as in the Court of Appeal (see *ante*, fn. 4), defendant theorizes that providing special treatment for "relative[s]" and "household members," while denying such treatment to close emotional relationships in general, does not adequately serve the purposes behind section 1203.066(c). For example, defense counsel emphasized in oral argument before this court that marriage was merely "a piece of paper," and that defendant's eligibility for probation under this statute cannot constitutionally rest on whether he is related by marriage to the victims through their grandmother, Ruth P.

■ Broadly stated, equal protection of the laws means "that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness." (*People v. Romo* (1975) 14 Cal.3d 189, 196 [121 Cal.Rptr. 111, 534 P.2d 1015].) In determining whether such a deprivation has occurred, the court's ultimate task is to examine the validity of the underlying purpose, and the extent to which the disputed statutory classification promotes such purpose. (E.g., *Romo,* at pp. 196-197 [finding ample justification for disparate sentences authorized under two criminal assault statutes]; see *Weber v. City Council* (1973) 9 Cal.3d 950, 958-959 [109 Cal.Rptr. 553, 513 P.2d 601] [describing the appropriate level of judicial scrutiny based on the classification or interest undergoing constitutional challenge].)

As a foundational matter, however, all meritorious equal protection claims require a showing that "the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], original italics.) In other words, "neither the Fourteenth Amendment of the Constitution of the United States nor the California Constitution [citations] precludes classification by the Legislature or requires uniform operation of the law [for] persons who are different . . . 'with respect to the legitimate purpose of the law.'" (*In re Gary W.* (1971) 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201]; accord, *Dobbert v. Florida* (1977) 432 U.S. 282, 301 [97

S.Ct. 2290, 2302, 53 L.Ed.2d 344] [capital defendant sentenced under a revised statute is not similarly situated to defendants whose death sentences were commuted when the predecessor statute was ruled unconstitutional]; *Tigner v. Texas* (1940) 310 U.S. 141, 145-147 [60 S.Ct. 879, 881-882, 84 L.Ed. 1124, 130 A.L.R. 1321] [retailers subject to criminal punishment under antitrust law are not similarly situated to farmers and ranchers, who are exempt under the same provisions].)

■ Defendant fails to consider that he is not similarly situated for sentencing purposes to the relatives and nonrelative household members covered by section 1203.066(c)(1). As we have seen, there is evidence of a unique dynamic between underage victims and the class of sexual offenders targeted by the statute, such that special measures are needed to prompt the reporting of such crimes in the first place. It also appears the features that define these statutory relationships make such offenders more amenable to treatment and less likely to reoffend once conviction has occurred. Hence, compared to someone who lacks the necessary statutory connection and who may have developed a quasi-familial relationship for perverse sexual purposes, the family and household offenders listed in section 1203.066(c)(1) are potentially less dangerous to society at large. Of course, the requisite blood, legal, or residential relationship not only gives rise to the kind of close familial bond the statute seeks to preserve, but also offers some tangible proof that it exists.

In light of these differences, defendant is not similarly situated to, and need not receive the same sentencing treatment as, a "natural parent, adoptive parent, stepparent, relative, or . . . member of the victim's household who has lived in the victim's household." (§ 1203.066(c)(1); accord, *People v. Thompson, supra,* 205 Cal.App.3d 871, 881-882 [rejecting equal protection challenge to § 1203.066, subd. (a)(3) brought by a defendant who befriended an underage child in order to sexually abuse him and who claimed to be similarly situated to other offenders not subject to the same statutory ban on probation, including intrafamilial offenders under § 1203.066(c)(1)].)

## III. CONCLUSION

The Court of Appeal erred in finding that defendant "qualifie[d] for probation under subdivision (c) of Section 1203.066" within the meaning of section 667.61(c)(7). The One Strike sentence imposed by the trial court should not have been reversed on this ground by the Court of Appeal.

The judgment of the Court of Appeal is reversed insofar as it vacated the concurrent 15-year-to-life prison sentences imposed under section 667.61, subdivision (b) on defendant's four convictions under section 288(a).

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.