Filed 1/5/21  P. v. Taylor CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C085359 |
| v. | (Super. Ct. No. F15-000250) |
| ROBERT LEWIS TAYLOR, | |
| Defendant and Appellant. | |

A jury convicted defendant Robert Lewis Taylor on six counts alleging lewd acts upon a child under the age of 14, and it found true allegations that defendant engaged in substantial sexual conduct with one victim and committed sexual offenses against more than one victim.  The trial court imposed a sentence of 30 years to life under the one strike law.

Defendant now contends (1) on counts I through V, the trial court did not sentence him under the law in effect at the time his offenses were committed, in violation of ex post facto principles; (2) the trial court erred in denying his motion for a new trial based on juror misconduct; (3) the trial court failed to recognize that the Penal Code

1

section 288, subdivision (e)[1] fines were not mandatory; and (4) the imposed section 290.3, subdivision (a) fines and associated penalty assessments violate ex post facto laws, and the Government Code section 76104.6 penalty assessments are unauthorized.

We conclude (1) although the version of law in effect at the time of the offenses allowed for the possibility of probation, any error in failing to consider eligibility for probation was harmless beyond a reasonable doubt because on this record defendant is not eligible for probation; (2) in denying the new trial motion, the trial court did not abuse its discretion or deny defendant due process or a fair trial; (3) the record demonstrates that the trial court exercised its discretion in imposing the section 288, subdivision (e) fines; and (4) we will modify the judgment to impose authorized fines and penalty assessments.

We will affirm the judgment as modified.

BACKGROUND

Briana P.'s mother was married to defendant from July 2000 to May 2001. Briana was very close to defendant and his daughters. Briana testified defendant was like a father to her. She maintained communication with defendant and remained close friends with his daughters after she and her mother moved out of defendant's house. Briana described an occasion when defendant gave her a massage as she lay face down, covered by a sheet and wearing only her underwear, and defendant "was getting sort of close to some areas" that made Briana uncomfortable. Briana was 12 or 13 years old at the time of the incident.

Haley G.'s mother dated defendant after being close friends with him for a long time. Haley, her mother and her brother lived with defendant and his daughters from

_____

[1] Undesignated statutory references are to the Penal Code.

2

January 2005 until sometime after July 2006. Defendant was like a stepfather to Haley. Haley had a very close relationship with him.

Haley was 23 years old at the time of the trial. She testified about seven incidents of inappropriate touching when she was 11 years old. She said defendant touched her vagina with his hands, inserted his fingers in her vagina and massaged her bare buttocks with his hands. Haley continued to communicate with defendant after she and her mother moved out of defendant's house.

Jade L. was 23 years old at the time of the trial. Defendant was married to Jade's aunt. Jade had a very close relationship with defendant and his daughters. She visited defendant and her cousins at defendant's home, and the two families went on vacations together. Jade testified that defendant placed his hand under her shirt and rubbed her breast during a camping trip when she was 12 years old. The camping trip occurred in August 2006.

Emily H.'s mother also dated defendant. Emily, her mother and her brother lived with defendant and his daughters for about four years beginning in October 2008. Emily viewed defendant as a stepfather and was very close to him. She testified that defendant touched her inappropriately during massages starting when she was 16 until she was 19.

The People charged defendant with seven counts alleging a lewd act upon a child under the age of 14 (§ 288, subd. (a) -- counts I-VI, XII), one count of misdemeanor sexual battery (§ 243.4, subd. (e) -- count VII), one count of forcible sexual penetration (§ 289, subd. (a)(1) -- count VIII), and three counts of molesting a child under the age of 18 (§ 647.6, subd. (a)(1) -- counts IX-XI). Defendant testified at the trial and denied the allegations against him.

The jury convicted defendant on five counts of a lewd act upon a child (§ 288, subd. (a) -- counts I to V) against Haley and one count of a lewd act upon a child (§ 288, subd. (a) -- count VI) against Jade. The jury found true allegations that Haley was under the age of 14 and that defendant engaged in substantial sexual conduct with her within

3

the meaning of section 1203.066, subdivision (a)(8) as to counts II through V. The jury also found true an allegation that defendant committed sexual offenses against more than one victim within the meaning of section 667.61, subdivision (e)(4).

The jury found defendant not guilty on the count VIII (§ 289, subd. (a)(1)) and XII (§ 288, subd. (a)) charges involving Emily and Briana. It could not reach a verdict on the count VII (§ 243.4, subd. (e)), IX (§ 647.6, subd. (a)(1)), X (§ 647.6, subd. (a)(1)) and XI (§ 647.6, subd. (a)(1)) charges relating to Emily, and the People later dismissed those counts. The trial court sentenced defendant to a prison term of 30 years to life.

DISCUSSION

I

Defendant contends that on counts I through V, the trial court did not sentence him under the law in effect at the time his offenses were committed, in violation of ex post facto principles. Specifically, he claims that because the trial court should have sentenced him under the versions of sections 667.61 and 1203.066 in existence in 2005, the trial court should have considered whether he was eligible for probation.

Section 667.61, the one strike law, requires indeterminate life sentences for enumerated sex offenses committed under certain aggravated circumstances. The current version of the statute mandates a 15-year-to-life prison term when a defendant, as in this case, is convicted of violating section 288, subdivision (a) against more than one victim. (§ 667.61, subds. (b), (c)(8), (e)(4).) The current version also renders a defendant ineligible for probation. (§ 667.61, subd. (h).)

The parties agree, however, that the 2005 version of the law applies in this case. Former section 667.61 provided for an indeterminate term "unless the defendant qualifies for probation under [former] subdivision (c) of Section 1203.066." (Stats. 1998, ch. 936, § 9 [former § 667.61, subdivisions (b), (c)(7), (e)(5)]; see Stats. 2006, ch. 337, § 33 [deleting the probation qualification language in former section 667.61, subdivision (c)(7)

4

effective September 20, 2006]; *People v. Wutzke* (2002) 28 Cal.4th 923, 927-928, 931 (*Wutzke*).)

Former section 1203.066, subdivision (c) authorized probation under specified circumstances. (*People v. Hammer* (2003) 30 Cal.4th 756, 765-766; *Wutzke, supra*, 28 Cal.4th at p. 928; *People v. Jeffers* (1987) 43 Cal.3d 984, 993-997 (*Jeffers*).) Eligibility for probation required the following findings: "(1) The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the victim's household. [¶] (2) A grant of probation to the defendant is in the best interest of the child. [¶] (3) Rehabilitation of the defendant is feasible, the defendant is amenable to undergoing treatment, and the defendant is placed in a recognized treatment program designed to deal with child molestation immediately after the grant of probation or the suspension of execution or imposition of sentence. [¶] (4) The defendant is removed from the household of the victim until the court determines that the best interests of the victim would be served by returning the defendant to the household of the victim. . . . [¶] (5) There is no threat of physical harm to the child victim if probation is granted." (Stats. 1997, ch. 817, § 13 [former section 1203.066, subdivision (c)].) But even if the findings established defendant's eligibility for probation, the sentencing court retained discretion to find the defendant unsuitable for probation and to order imprisonment. (*Wutzke,* at pp. 932, fn. 7, 942; *Jeffers,* at p. 1000.)

At sentencing, the trial court did not mention probation under former section 1203.066. The Probation Officer's Report, which the sentencing court considered, stated that defendant was not eligible for probation under section 667.61, subdivision (h) and was presumptively ineligible for probation under section 1203.066, subdivisions (a)(7) (multivictim section 288 case) and (a)(8) (section 288 case involving substantial sexual conduct with a victim under the age of 14), without discussing the former section 1203.066, subdivision (c) factors. The report concluded that a 15-year-to-life sentence

on each count was mandatory because the jury found the section 1203.066, subdivision (a)(7) multiple-victim allegation true. Defendant's statement in mitigation agreed that he was ineligible for probation. It thus appears, as the parties suggest, that the trial court did not consider defendant's eligibility for probation under the versions of sections 667.61 and 1203.066 in effect at the time of the offenses, i.e., prior to January 1, 2006.

Any error in failing to consider whether defendant was eligible for probation is harmless beyond a reasonable doubt, however, because on this record, defendant is not eligible for probation. (*Wutzke, supra,* 28 Cal.4th at p. 932; *People v. Lammey* (1989) 216 Cal.App.3d 92, 98.) Under the former law, defendant is not eligible for probation unless all five criteria in former section 1203.066, subdivision (c) are established.

Citing *People v. Wills* (2008) 160 Cal.App.4th 728 (*Wills*), the Attorney General argues defendant cannot establish the former section 1203.066, subdivision (c)(2) factor -- that a grant of probation is in the best interest of the child -- because Haley G. was no longer a child at the time of sentencing. In *Wills*, the appellate court held that use of the present tense "is" in section 1203.066, subdivision (c)(2) indicated a legislative intent to evaluate the circumstances at the time of sentencing in determining whether probation was in the best interest of the child victim. (*Id.* at p. 737.) The court concluded that when the victim is no longer a child at the time of sentencing, the sentencing court cannot find that probation is in the best interest of the child. (*Ibid.*)

Defendant urges us to disagree with *Wills*. But irrespective of the holding in *Wills*, the record shows defendant is not eligible for probation because there is no evidence probation was in Haley's best interest regardless of her status as a child. We construe section 1203.066, subdivision (c) in light of the concerns the Legislature considered when it enacted that statute. (*Jeffers, supra*, 43 Cal.3d at p. 997.) The subdivision addressed concerns relating to intrafamilial and same-household offenders. (*Wutzke, supra,* 28 Cal.4th at pp. 935-938.) Lawmakers were presented with evidence that in some cases,

6

young victims may feel they might share in the blame, may resist implicating a close relation, may want to avoid dissolving a family unit, or may fear financial abandonment. (*Id.* at pp. 936-937; see also *Jeffers,* at pp. 994-995.) It was expressed that without an option for probation, victims and their families might be deterred from reporting a crime or from cooperating with law enforcement. (*Ibid*.) Here, however, there is no evidence that Haley felt any of these concerns. The Probation Officer's report indicated defendant was not the primary source of income for anyone other than himself. Haley and her parents' statements at the sentencing hearing showed they blamed defendant, not Haley, and they did not express a wish to maintain ties with defendant. Haley testified she had cut all contact with defendant. At sentencing, her mother condemned defendant for grooming and violating the victims and then abandoning and attacking them when the truth came out. Haley's father asked the court to sentence defendant to prison for the rest of defendant's life to prevent his reoffending. Nothing in the statements of Haley and her parents would support a finding that probation was in Haley's best interest.

On this point, defendant argues that "stability of the complainant's family would be beneficial and appellant could contribute to counseling costs." However, he does not cite any portion of the record to support his assertions and he does not explain how Haley's family would be more stable if he were granted probation. We do not consider claims made without citation to the record. (*People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 [an assertion that is unsupported by a reference to the record is waived].)

The ex post facto clauses of the state and federal Constitutions preclude the state from retroactively increasing the punishment for criminal acts. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1173.) Here, the one strike law in effect at the time of defendant's crimes required a mandatory prison term unless defendant was eligible for probation and the trial court ultimately exercised its discretion to place him on probation. Because the record establishes defendant is not

7

eligible for probation under former section 1203.066, subdivision (c), any error by the trial court in failing to consider his eligibility for probation is harmless beyond a reasonable doubt. Under the circumstances, we reject defendant's claim that the trial court retroactively increased his punishment.

II

Defendant next argues the trial court denied him due process and a fair trial by denying his motion for a new trial based on juror misconduct.

A

Defendant's motion for a new trial was based in relevant part on alleged misconduct by Juror No. 3, who had disclosed in voir dire that she was molested as a child. Juror No. 3 was in her late 60s or early 70s at the time of the trial.

During voir dire, defendant's trial counsel and the prosecutor examined Juror No. 3 about her disclosure. Juror No. 3 assured counsel that she could sit on the case impartially. She said she had "been on both sides" and had "seen people accused when it wasn't . . . ." She continued that many people were quick to accuse and once an accusation was made, "that's a terrible stigma" and "[i]f they're innocent, it's going to follow them the rest of their life." Juror No. 3 affirmed she was willing to follow the evidence in the case. The defense and prosecution did not excuse her for cause and they kept her on the jury panel even though they had unused peremptory challenges.

In support of the new trial motion, defendant submitted the declaration of the jury foreperson. The foreperson said she cried when the verdict was read and later sent defendant's daughter a note, apologizing and letting the daughter know "there was someone in that deliberation room in [defendant's] corner." The foreperson's note to the daughter said, "I argued every way [I] could for him for 3 days" but the charges relating to Haley were very difficult to argue against.

The foreperson attested that Juror No. 3 was quiet but, on the second day of deliberations, Juror No. 3 shared that she had been molested by a close family friend

8

when she was between four and eight years old. The foreperson could not recall the context in which Juror No. 3 spoke. According to the foreperson, there were a lot of similarities between Juror No. 3's story and the evidence the jury heard at the trial. Juror No. 3 was abused by a close family friend, someone beloved in the community, who was "respectable" and "not some awful, slimy, sleaze ball kind." The foreperson said Juror No. 3 was "adamant from the beginning about the defendant's guilt" and the foreperson did not think there was any way Juror No. 3 was unbiased. The foreperson said Juror No. 3 "had the room riveted for several minutes with what happened to her and how those suppressed memories came up for her later in therapy. Everybody was very focused on her and it was very intense and very emotional. She was choking back tears, when she stopped speaking there was a collective -- aw -- everybody let their breath go. Some jurors teared up while Juror [No. 3] shared her experience." The foreperson recounted that Juror No. 3 said the memory of her abuse did not come up until she was in her forties, in therapy for another issue. The foreperson further averred that Juror No. 3 repeatedly stated during deliberations that "This is how child molesters are;" "They do this kind of thing;" "They are often very beloved;" "That's what they do;" "This is how they operate;" "It's understandable or it's not hard to believe that you love the person that is doing this to you, you may even like the attention, it's not until later that you realize that something was wrong about it." According to the foreperson, Juror No. 3's comments were generalities about molesters. The foreperson opined that in Juror No. 3's mind the person who hurt her, and not defendant, was on trial. The foreperson also said defendant's case was his good character but Juror No. 3's repeated response to that was "he was grooming these girls." She said the other jurors seemed to give Juror No. 3 "more credibility and weight regarding the character and behavior of a molester and experience of their victim" and the foreperson believed some jurors perceived Juror No. 3 as an expert on molestation. Notwithstanding her concerns about the jury deliberations, the foreperson did not disavow the verdict.

Defendant subsequently submitted the declaration of Juror 766521. According to that juror, Juror No. 3 shared in the jury room that the perpetrator in her case was very close to her and that defendant's behavior was indicative of "grooming the girls."

The People opposed the new trial motion, arguing that portions of the foreperson's declaration were inadmissible under Evidence Code section 1150 and that the admissible portions did not show juror misconduct or prejudice.

The trial court denied defendant's motion. It found no misconduct by Juror No. 3 and nothing in the record suggesting an effort to convict that was influenced or instigated by Juror No. 3.

B

A verdict must be based on the evidence presented at trial and not on extrinsic matters. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1414 (*Leonard*).) But jurors' views of the evidence are informed by their life experiences. (*In re Lucas* (2004) 33 Cal.4th 682, 696.) It is not necessarily misconduct for a juror to share during deliberations the juror's thoughts based on personal experience. (*Leonard,* at pp. 1381, 1413-1414; *In re Lucas,* at pp. 697; *People v. Yeoman* (2003) 31 Cal.4th 93, 162.)

Moreover, in considering a claim of juror misconduct, no evidence is admissible to show the effect of statements upon jurors in reaching a verdict or the mental processes by which the juror's decision was determined. (Evid. Code, § 1150, subd. (a); *People v. Steele* (2002) 27 Cal.4th 1230, 1261 (*Steele*).) Thus, the following statements by the foreperson are inadmissible under Evidence Code section 1150, subdivision (a), and we do not consider them in addressing defendant's contention: (1) some jurors perceived Juror No. 3 as an expert; (2) in Juror No. 3's mind, her own molester and not defendant was on trial; (3) "this was not about the person on trial. This was more about her own internal trial;" (4) to Juror No. 3 defendant's "good character" "seemed to be evidence of his guilt;" and (5) "[e]verbody on the jury seemed to give [Juror No. 3] a lot more credibility and weight regarding the character and behavior of a molester and experience

10

of their victim." (*People v. Hensley* (2014) 59 Cal.4th 788, 825, fn. 14 [a statement about the effect a conversation had on a juror's mind and decision cannot be considered]; *People v. Manibusan* (2013) 58 Cal.4th 40, 55, 57 [one juror's understanding of what another juror's statement meant was inadmissible, and a juror's statement about the effect information another juror shared had on his own and other jurors' subjective reasoning processes was also inadmissible]; *Steele, supra,* 27 Cal.4th at p. 1265 [statements about the effect jurors' statements had on the jury's deliberations were inadmissible].)

The foreperson averred that Juror No. 3's "interpretation" of evidence of defendant's good character was that defendant was "grooming these girls." A juror's evaluation of the evidence and rejection of a defense as not credible based on the juror's personal experiences does not by itself constitute misconduct. (*Leonard, supra*, 40 Cal.4th at p. 1414; *In re Lucas, supra*, 33 Cal.4th at p. 697, *Steele, supra*, 27 Cal.4th at pp. 1265-1267.) " '[J]urors cannot be expected to shed their backgrounds and experiences at the door of the deliberation room.' " (*In re Lucas,* at p. 696.) They " 'bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience.' [Citation.] This experience may stem from education or employment, but sometimes it comes from other personal experiences." (*Ibid.*) " '[J]urors are expected to bring their individual backgrounds and experiences to bear on the deliberative process.' " (*Ibid.*) The trial court instructed the jury that testimony about defendant's good reputation for appropriate behavior with children can create a reasonable doubt whether defendant committed the alleged offenses, but the jury must decide the meaning and importance of the character evidence. The foreperson's statement indicates Juror No. 3 followed the trial court's instruction.

Moreover, where the evidence is susceptible to various interpretations, jurors may use their own experience to evaluate it within the range of permissible interpretation. (*Steele, supra*, 27 Cal.4th at p. 1265-1266.) Juror No. 3's statements about molesters in general and grooming were consistent with the conflicting evidence presented at trial.

11

The trial court instructed the jury that its verdict must be based only on the evidence presented at trial and the law the trial court provided. The trial court explained it was unfair to the parties if the jury received additional information from any other source because that information may be unreliable or irrelevant and the parties would not have the opportunity to examine and respond to it. It admonished the jury to use only the evidence presented in the courtroom to decide the facts. It defined evidence as the sworn testimony of witnesses, exhibits admitted into evidence and anything else the trial judge told the jury to consider as evidence. It also said the jury must judge the credibility of the witnesses and the jury could use its common sense and experience in deciding whether testimony was true. Even if Juror No. 3 did not follow the trial court's instruction to use only the evidence presented in the courtroom to decide the facts, it appears she followed the instruction to use her common sense and experience in deciding whether testimony was true. Based on the totality of the circumstances, defendant has not established denial of due process or a fair trial.

*In re Lucas* is instructive. In that case, the defendant claimed he killed his neighbors while unconscious after injecting large quantities of methamphetamine, cocaine and heroin. (*In re Lucas, supra,* 33 Cal.4th at pp. 688, 691.) A referee appointed to conduct an evidentiary hearing and make findings concerning the defendant's claim of juror misconduct determined that a juror had concluded the defendant had lied about how much drugs he had taken or the effect those drugs had on the defendant; the juror shared his opinion with the other jurors; and the juror's opinion was based on the juror's personal experience with controlled substances and not on evidence received at the trial. (*Id.* at pp. 693, 695.) The California Supreme Court rejected the claim of juror misconduct. (*Id.* at p. 697.) It noted that the juror did not hold himself out as an expert in a technical matter on the basis of his education or occupation, but merely related his personal experience about a matter that was of fairly common knowledge, as it related to the evidence and the inferences the defendant wanted the jury to draw from the evidence.

12

(*Ibid.*)  The Court also considered the fact that the juror disclosed that he was a former addict and alcoholic during voir dire.  (*Ibid.*)  It held it was not substantially likely that any juror was biased by the challenged juror's comments, considering the general awareness people had of the effects of controlled substances, the mild and brief nature of the comments, the tentative spirit in which they were offered, and the lack of insistence that the comments should convince the other jurors to reject the defense.  (*Ibid.*)

Here, the foreperson did not aver facts showing that Juror No. 3 presented herself as an expert on child molestation.  Rather, Juror No. 3 shared her own experience of being sexually abused as a child, not a matter based on outside research or her education or profession.  She disclosed in voir dire that she was a victim of child sexual abuse. Many venire members disclosed they, a family member or someone close to them had been a victim of sexual abuse as a child.

The record also does not establish inappropriate influence.  The jury acquitted defendant on two counts and hung on four counts, indicating the jurors considered each count separately, it was not substantially likely that the Juror No. 3's statements affected the verdict, and no juror had an actual bias against defendant.

Defendant's contention lacks merit.

### III

Defendant also argues the trial court incorrectly believed the section 288, subdivision (e) fines were mandatory.

Former section 288, subdivision (e) provided that on a conviction for a violation of section 288, subdivision (a), the court may order the defendant to pay an additional fine not to exceed $10,000.  (Stats. 2004, ch. 823, § 7.)  With regard to fines, the trial court stated, "The Legislature requires me to consider fines, which always troubles me in cases like this. *But I'm required to do it, so I'll do it.*  Section 288[, subdivision (e)], this is the specific fine for people convicted of 288's of as much as $10,000, which when you stack what are called penalty assessments on top of that that's probably, what, 35 or $40,000.

13

I'll select 2000 as the appropriate number, a thousand for each of the victims here. With penalty assessments that becomes $7,350." (Italics added.)

Defendant construes the above italicized sentence to mean that the trial court believed the section 288, subdivision (e) fine was mandatory. We disagree with that characterization. The trial court merely noted it must "consider" whether to impose fines. It did not say the Legislature required the trial court to impose the section 288 fines. Based on the manner in which the trial court imposed the section 288, subdivision (e) fines, the record demonstrates the trial court exercised its discretion.

## IV

Defendant further contends the trial court did not impose section 290.3, subdivision (a) fines and associated penalty assessments under the version of the law in effect at the time of the offenses, in violation of ex post facto principles. In addition, defendant argues the imposed Government Code section 76104.6 penalty assessments are unauthorized.

## A

Trial testimony established that the count I through V offenses occurred in 2005 and the count VI offense occurred in August 2006. The version of section 290.3, subdivision (a) in effect at the time of those offenses provided: "Every person who is convicted of any offense specified in subdivision (a) of Section 290 [which includes violation of section 288] shall . . . be punished by a fine of two hundred dollars ($200) upon the first conviction or a fine of three hundred dollars ($300) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." (Stats. 1995, ch. 91, § 121; Stats. 2006, ch. 69, § 27.) Effective September 20, 2006, the amounts of the section 290.3, subdivision (a) fines were changed to $300 for the first conviction and $500 for the second and each subsequent conviction. (Stats. 2006, ch. 337, § 18.)

14

The trial court imposed section 290.3 fines of $300 on count II and $500 on count VI. The Attorney General agrees those fines were incorrect, and we agree too. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1372; *People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248 (*Valenzuela*).)

"[A]n unauthorized sentence may be corrected at any time even if there was no objection in the trial court. [Citations.] Such an unauthorized sentence may be corrected even when raised for the first time on appeal. [Citations.]" (*Valenzuela, supra*, 172 Cal.App.4th at p. 1249.) We will modify the section 290.3 fines and associated penalty assessments on counts II and VI because they are unauthorized. (*Ibid.* [modifying section 290.3, subdivision (a) fine to the amount authorized as of the date of the offense].)

B

At the time of the offenses, Government Code section 76104.6, subdivision (a) provided in relevant part: "For the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act, there shall be levied an additional penalty of one dollar for every ten dollars ($10) or fraction thereof . . . upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses . . . ." (Prop. 69, § IV, approved Nov. 2, 2004, eff. Nov. 3, 2004.) The Attorney General agrees the Government Code section 76104.6, subdivision (a) penalty assessments imposed in this case do not conform with the former statute and must be modified. We also agree. We will modify the judgment to reflect the authorized Government Code section 76104.6, subdivision (a) penalty assessments.

DISPOSITION

The judgment is modified to reflect the following authorized fines and fees. The section 290.3, subdivision (a) fine on count II is $200 rather than $300. The penalty assessments on count II are $200 rather than $300 (§ 1464, subd. (a)), $100 rather than $142.50 (Gov. Code, § 76000, subd. (a), (e)), $20 rather than $150 (Gov. Code,

15

§ 76104.6, subd. (a); $100 rather than $150 (Gov. Code, § 70372, subd. (a)), and $40 rather than $60 (§ 1465.7, subd. (a)).  The section 290.3, subdivision (a) fine on count VI is $300 rather than $500.  The penalty assessments on count VI are $300 rather than $500 (§ 1464, subd. (a)), $150 rather than $237.50 (Gov. Code, § 76000, subd. (a), (e)), $30 rather than $250 (Gov. Code, § 76104.6, subd. (a)), $150 rather than $250 (Gov. Code, § 70372, subd. (a)), and $60 rather than $100 (§ 1465.7, subd. (a)).  The Government Code section 76104.6, subdivision (a) penalty assessment on the section 288, subdivision (e) fine is $200 rather than $1,000.  As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the judgment as modified and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

 

                                         /S/
                                   MAURO, Acting P. J.

We concur:


    /S/
MURRAY, J.


    /S/
RENNER, J.

16