Filed 3/21/22  P. v. Ultreras CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY ROBERT ULTRERAS,<br><br>　　Defendant and Appellant. | 2d Crim. No. B310187<br>(Super. Ct. No. 2020010153)<br>(Ventura County) |

   Anthony Robert Ultreras appeals from the judgment after the jury convicted him of molesting a child under the age of 18 (count 1, Pen. Code, § 647.6, subd. (a)(1))[1] and committing a lewd act on a child under the age of 14 (count 3, § 288, subd. (a)). He pled guilty to possession of child pornography with prior convictions (count 2, § 311.11, subd. (b)).  He admitted that he suffered a prior conviction of section 288, subdivision (a), as a prior strike (§§ 667, subds. (c)(1), (e)(1), 1170.12, subd. (c)(1)) and

---

[1] Undesignated statutory references are to the Penal Code.

as a sentence enhancement (§§ 647.6, subd. (c)(2), 667, subd. (a)(1), 667.61, subd. (d)(1), 1170, subd. (h)(3), 1170.12, subd. (a)(1)). The trial court sentenced him to 50 years to life in prison plus a determinate term of 14 years eight months.

Ultreras contends: (1) the lewd conduct conviction is not supported by substantial evidence, (2) the trial court abused its discretion when it did not dismiss the prior strike, (3) the sentence constitutes cruel and unusual punishment, (4) Senate Bill No. 567 mandates resentencing, and (5) Senate Bill No. 81 applies at resentencing. We remand for resentencing in compliance with Senate Bills Nos. 567 and 81. In all other respects, we affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**
***The bus incident (count 1)***

In March 2020, I.M. was 13 years old. Shortly after she boarded a city bus to return home from middle school, Ultreras moved from another seat and sat next to her. She did not know him. He sat so close that their bodies were touching. Ultreras was 39 years old.

Ultreras introduced himself and shook her hand. He told her she had "gorgeous eyes." He asked if she "was into boys or girls" and if she shaved her pubic hair. He talked about performing oral sex on her. He said he wanted to take her to a hotel and "spoil" her, and said he wanted her "to rape him." He set a date to meet her at a hotel. I.M. felt "[v]ery uncomfortable" during the conversation.

When she got off the bus, Ultreras ran after her. He walked alongside her during the seven to eight minute walk to her house. He continued to talk about going to a hotel.

2

### *Incident at victim's house (count 3)*

When they arrived at I.M.'s house, Ultreras told her to hold out her hands. He firmly gripped her hands and asked her twice if he could kiss her. He called her "baby" and looked at her body "up and down." He said he was excited to meet her at a hotel. Several times he slid his hands under the sleeves of her sweater and touched the bare skin of her wrists.

The incident lasted about a minute. It was difficult for I.M. to free herself from his grip but she eventually did so. She walked up the stairs to her house and banged on the door until she was let in.

### *Child pornography (count 2)*

Police seized Ultreras's cell phone and examined memory cards installed in it. They contained approximately 51 images of children, some as young as nine to 12, including images of nude children with their breasts, vaginas, and/or anuses exposed, and cartoon images of adults having intercourse with children. The jury heard testimony regarding this offense and was informed that Ultreras pled guilty to it. (§ 311.11, subd. (b).)

### *Prior convictions*

The jury heard evidence regarding two of Ultreras's prior convictions: In 2011, Ultreras put his hand under the underwear of his 10-year-old daughter and touched her vagina. He asked her to kiss his cheek. In 2017, Ultreras tapped the shoulder of a 12-year-old girl he did not know in a laundromat. He handed her a note that said she was "really pretty," contained his telephone number, and asked her to call him.

For the first incident, Ultreras was convicted in 2012 of lewd act on a child (§ 288, subd. (a)). He was placed on probation but after violating it was sentenced to three years in

prison.  For the second incident, he was convicted of child molestation (§ 647.6, subd. (a)) and was sentenced to four years in prison.

In addition, the probation report described a 2004 conviction for child molestation (§ 647.6, subd. (a)).  In that case, Ultreras "tongue kissed" a 13-year-old girl and "began to 'grind' his 'private' area" against her.  He was placed on 36 months' probation with terms including 60 days in jail.

### *Sentencing*

I.M. submitted a victim impact statement.  She stated that the case was "painful," affected her "in a very negative way," made her distrust adults, and made her afraid when she went outside.  As a result, she walked with others or was driven when she left the house.  Although she continued to cry about the event, she did not require counseling or therapy.

The trial court granted the motion to strike the five-year enhancement for the serious felony prior conviction. (§§ 667, subd. (a)(1), 1385.)

The court denied the motion to dismiss the prior strike.  (§§ 667, subds. (c)(1), (e)(1), 1170.12, subd. (c)(1).)  The trial court ruled:  "[T]he Romero[2] Motion is denied.  [¶]  The Court will find that the defendant's conduct and criminal record fall within the spirit of the three-strikes law.  As evidenced by the defendant's criminal history, he appears to be a sexual predator. His convictions, in terms of sexual offenses, . . . began in 2004."

For count 1, the court imposed the upper term of six years, doubled to 12 years for the prior strike.  (§§ 647.6, subd. (c)(2), 667, subd. (e)(1), 1170.12, subd. (c)(1).)  For count 2, the

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

court imposed one-third of the mid-term of four years, doubled to two years eight months for the prior strike, to run consecutive to count 1. (§§ 311.11, subd. (b), 667, subd. (e)(1), 1170.1, subd. (a), 1170.12, subd. (c)(1).) The total determinate sentence was 14 years eight months. For count 3, the court imposed a sentence of 25 years to life, doubled for the prior strike to 50 years to life. (§§ 288, subd. (a), 667.61, subds. (a), (c)(8), (d)(1), 667, subd. (c)(1), 1170.12, subd. (c)(1).)

## DISCUSSION

### *Sufficiency of the evidence*

Ultreras contends the evidence was not sufficient to convict him of count 3 (§ 288, subd. (a)). We disagree.

"When a defendant challenges the sufficiency of the evidence, '"[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We ""presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' [Citation.]' [Citation.]" (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.) The substantial evidence test also applies to the intent element of the crime. (*Id.* at pp. 945-946.)

Section 288, subdivision (a), imposes liability on any person "who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of

5

arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." It is not necessary "that specific or intimate body parts be touched. Rather, a touching of 'any part' of the victim's body is specifically prohibited." (*People v. Martinez* (1995) 11 Cal.4th 434, 442 (*Martinez*) [waist and wrists of first victim; neck or shoulder and "chest" of second victim].) The touching may be of bare skin or through the clothing. (*Id.* at p. 444.)

To find the required intent, the trier of fact considers "'all the circumstances, including the charged act,' . . . the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection [citation]." (*Martinez*, 11 Cal.4th at p. 445.)

There was substantial evidence that Ultreras acted with lewd intent when he slid his hands under I.M.'s sleeves and touched her bare wrists. When he did so, he asked to kiss her, looked at her body, called her "baby," and expressed his desire to meet her at a hotel for sex. Any ambiguity in his conduct was clarified by the desires he stated on the bus: to orally copulate her and have her "rape" him. His sexual interest was further shown by his previous convictions for conduct with young girls and the child pornography on his phone.

Ultreras contends there is insufficient evidence that he touched I.M. "for the *present and immediate* purpose of sexually arousing or gratifying the toucher or the victim." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1171, some italics omitted; *Martinez*, 11 Cal.4th at pp. 451, fn. 17, 452.) He is wrong. Substantial evidence supports the finding that when Ultreras

6

forcefully held I.M.'s hands, slipped his hands under her sweater, touched her bare skin, and asked to kiss her, he had the purpose of immediate sexual arousal or gratification and was not merely attempting to schedule a future encounter.

## Romero *motion*

Based on Ultreras's 2012 lewd conduct conviction (§ 288, subd. (a)), the trial court doubled his sentence for all three counts as a "second strike." (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1).) Ultreras contends the trial court erred when it denied his *Romero* motion to dismiss ("strike") the strike. We conclude otherwise.

The trial court has the discretion to dismiss a prior violent or serious felony conviction pursuant to the Three Strikes law. (*Romero*, 13 Cal.4th at p. 504.) We review the trial court's decision to not dismiss a strike for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony I*).) We presume the trial court considered all relevant factors, even if it did not mention them all. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

In reviewing a ruling whether to strike a strike, we "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) Those factors support denial of the *Romero* motion here.

We disagree with the characterization of the crimes as "de minimis." But the fact that the physical contact was on the less serious end of the continuum encompassed by section 288

7

did not require the trial court to dismiss the strike. An appellate court may not reverse the denial of a *Romero* motion by "erroneously focus[ing] on a single factor—the nature and circumstances of [the defendant's] current offense—to the exclusion of all others." (*Carmony I*, 33 Cal.4th at pp. 373, 379.)

Moreover, denial of the *Romero* motion was also supported by Ultreras's prior record. The current offenses resulted in his fourth conviction for child molesting or lewd conduct against a child.

In considering a *Romero* motion, the court may consider the age of the prior offenses. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1141 (*Avila*).) But remoteness in time is an insufficient basis to strike a strike where the defendant has not had "a crime-free cleansing period of rehabilitation" but instead "has led a continuous life of crime after the prior." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [error to strike 20-year-old strike]; *Williams, supra*, 17 Cal.4th at p. 163 [error to strike 13-year-old strike].)

Although the 2004 incident occurred 16 years before the current offenses, the more recent prior offenses do not demonstrate significant periods of obedience to the law. While still on parole for the 2012 conviction, he committed the 2017 offense. While on parole for the 2017 offense, he committed the current offenses. In light of his repeated molestation and lewd conduct toward young girls, "there is simply nothing mitigating" about the age of his prior offenses. (*People v. Humphrey, supra*, 58 Cal.App.4th at p. 813.)

Nor do Ultreras's "background, character, and prospects" place him outside the Three Strikes law. (*Williams, supra*, 17 Cal.4th at p. 161.) He reported occasional drug use and

diagnoses of bipolar disorder and paranoia, but nothing in the record shows that this background lessened his culpability. He reoffended during two grants of parole, which demonstrated the likelihood he would reoffend if released.

*Avila*, relied upon by Ultreras, does not compel a different result. The priors in that case were committed 26 to 28 years earlier, when the defendant was under the age of 21, and he committed only minor offenses in the seven years before the current offenses. (*Avila, supra*, 57 Cal.App.5th at pp. 1141, 1143.) In contrast, Ultreras's most recent prior offenses were committed only nine and three years before the current offenses, when he was 30 and 36 years old. Between 2011 and 2020, he was either incarcerated or on parole, and he again molested children shortly after his release from both prison terms.

### Cruel and unusual punishment

Ultreras contends the sentence constitutes cruel and unusual punishment. Because determination of whether a sentence constitutes cruel and unusual punishment requires a fact-specific examination of both the offense and the offender, the issue is forfeited if not raised in the trial court. (*People v. Brewer* (2021) 65 Cal.App.5th 199, 212.) The issue is thus forfeited.[3]

On the merits, we conclude the sentence is constitutionally permissible. The Eighth Amendment's prohibition against cruel and unusual punishment "'does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly

---

[3] Ultreras does not claim that his trial counsel rendered ineffective assistance when she failed to object that the sentence was cruel or unusual. (Cf. *People v. Brewer, supra*, 65 Cal.App.5th at p. 212.)

disproportionate" to the crime.'" (*Ewing v. California* (2003) 538 U.S. 11, 23 (*Ewing*) (lead opn. of O'Connor, J.); *In re Coley* (2012) 55 Cal.4th 524, 542.) To determine if the California provision is violated, the "sole test" is whether the sentence "'is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (*People v. Dillon* (1983) 34 Cal.3d 441, 478, 487, fn. 38.)

"The gravity of an offense can be assessed by comparing the harm caused or threatened to the victim or society and the culpability of the offender with the severity of the penalty." (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1077 (*Carmony II*).) Ultreras certainly posed a threat to I.M. and young girls in general, as exemplified by his approaching I.M. on a bus, attempting to arrange sex with her, following her home, and holding her hands so tightly that it took her several attempts to escape his grasp.

A claim of cruel and unusual punishment may also be rejected based on the defendant's prior record. In *Ewing, supra,* 538 U.S. 11, the United States Supreme Court rejected the claim that a sentence of 25 years to life for stealing three golf clubs worth $399 each was cruel and unusual punishment. The court held that characterizing the offense as "'shoplifting three golf clubs'" "incorrectly frames the issue." (*Id.* at p. 28.) Instead, the gravity of the offense included the defendant's history of violent or serious felonies. (*Ibid.*)

Before doubling his sentence because of the prior strike, the sentence for Ultreras's violation of section 288 was 25 years to life based on his prior conviction for the same offense. (§ 667.61, subds. (a), (d)(1).) The purpose of the One Strike legislation enacting that sentencing provision was that "rapist[s]

and child molesters . . . not be allowed to repeat their crimes. To protect our citizenry, especially our women and children, we must structure the law to keep violent child molesters and rapists off our streets . . . so we take away their ability to commit their crimes again." (Sen. Floor Com., Analysis of Sen. Bill No. 26 (1993-1994 1st Ex. Sess.) as amended Aug. 26, 1994, p. 3; see *People v. Wutzke* (2002) 28 Cal.4th 923, 929-930.)

The punishment here is unlike that held to be cruel or unusual in *Carmony II*. There, the defendant was sentenced to 26 years to life for failing to "update" his sex offender registration within five days of his birthday, even though he had registered his new address a month earlier and had not moved in the meantime. (*Carmony II*, *supra*, 127 Cal.App.4th at p. 1071.) The court found that it was "a harmless technical violation of a regulatory law." (*Id.* at p. 1072.) Ultreras's violations were neither "harmless" nor "technical."

In *In re Coley*, *supra*, 55 Cal.4th 524, our Supreme Court considered the identical statutory violation as in *Carmony II* but found the third strike sentence of 25 years to life did *not* constitute cruel and unusual punishment. Like the violation in *Coley*, the violation here "was not simply a minor or technical oversight by a defendant who had made a good faith effort to comply with the sex offender registration law." (*Id.* at p. 530.)

*In re Rodriguez* (1975) 14 Cal.3d 639 (*Rodriguez*), abrogated on another point as stated in *People v. Harris* (1990) 226 Cal.App.3d 141, 146, is inapposite. There, the defendant was convicted of section 288 after he saw a six-year-old girl roller skating, put her in his car, and "fondled the child's private parts." (*Rodriguez*, at p. 643, fn. 5.) His prior record included attempted statutory rape, child molest, and escape. (*Id.* at p. 644, fn. 6.)

11

The court held that failure to release the defendant after serving 22 years of a life sentence was disproportionate to the offense and constituted cruel and unusual punishment. (*Id.* at p. 653.) But unlike Ultreras, Rodriguez was only age 26 at the time of the offense, "had an I.Q. of about 68, and was functionally illiterate." (*Id.* at pp. 644, fn. 6, 655.) *Rodriguez* is also inapposite here because it "did not involve a recidivist statute." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511 [third strike sentence of 25 years to life not cruel or unusual for driving under the influence, possessing .18 grams methamphetamine, using methamphetamine, and threatening peace officer].)

### *Senate Bill No. 567*

In supplemental briefing, Ultreras contends that the trial court's selection of the upper term for count 1 is barred by Senate Bill No. 567 (2021-2022 Reg. Sess.), which amended section 1170, subdivision (b), effective January 1, 2022 (Stats. 2021, ch. 731, § 1.3). While we disagree that the new legislation necessarily prohibits the upper term, we agree that we must remand for the trial court to reconsider the sentence pursuant to Senate Bill No. 567.

The Governor signed Senate Bill No. 567 on October 8, 2021. The legislation prohibits imposition of the upper term unless there are "circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) However, "the court may consider the defendant's prior convictions in determining

sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

As the People concede, the amendment of section 1170 by Senate Bill No. 567 is ameliorative legislation that applies retroactively to Ultreras because his case is not final on appeal. (*In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Frahs* (2020) 9 Cal.5th 618, 627-637.)

The trial court stated its reasons for selecting the upper term, including that the victim was "vulnerable in a public place," Ultreras's prior convictions were "serious and numerous," he served prior prison terms, he committed the crimes while on parole, and his prior performance on probation and parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(a)(3), (b)(2), (3), (4) & (5).)[4] The court also relied on "other factors reasonably related to the sentencing decision" as provided in rule 4.420(b): "The conduct was brazen, being committed on a public bus with numerous passengers. The defendant in the past has committed other sexual-based offenses with victims being prepubescent girls including his own daughter. He has exhibited a prurient sexual interest in young girls, thus he is a danger to society."

The People contend that the upper term was authorized by Ultreras's stipulations at trial that in 2012, he was convicted of violation of section 288, subdivision (a), and in 2017, of section 647.6, subdivision (a). But although Ultreras did stipulate to these factors in aggravation, he did not stipulate to

_____

[4] Subsequent rule references are to the California Rules of Court.

13

others.  Nor were these facts found by the jury or established by certified records of conviction.[5]

Ultreras contends that the 2012 and 2017 convictions could not be used to impose the upper term because Senate Bill No. 567 continues the language of the former version of the statute:  "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."  (§ 1170, subd. (b)(5) (former subd. (b)); see rule 4.420(c).)  He is incorrect.

"'Enhancement' means an additional term of imprisonment added to the base term."  (Rule 4.405(3).)  A statute that uses a prior conviction to define the base term of a crime "is entirely different from a statute which imposes an 'enhancement' in addition to that base term."  (*People v. Demara* (1995) 41 Cal.App.4th 448, 452 [prior conviction properly used to both elevate base term for Vehicle Code, § 10851 and for prior prison term enhancement]; accord, *People v. Garcia* (2003) 107 Cal.App.4th 1159, 1165-1166.)  The 2012 conviction did not constitute an "enhancement" when it was used to elevate count 1 to a felony pursuant to section 647.6, subdivision (c)(2).  (*People v. Whitten* (1994) 22 Cal.App.4th 1761 [permitting dual use of prior to increase § 647.6 to felony and to impose upper term].)  For the same reason, the 2012 and 2017 convictions were not "enhancements" when they were used to impose an increased sentencing triad for count 2 pursuant to section 311.11, subdivision (b).

---

[5] During sentencing the court mentioned the 2004 conviction for section 647.6 that was listed in the probation report, but not established by a stipulation, jury finding, or certified record.

14

The 2012 prior was used to impose a One Strike sentence pursuant to section 667.61, and a two strikes sentence pursuant to sections 667, subdivisions (c)(1) and (e)(1), and 1170.12, subdivision (c)(1). But these are "alternative sentencing scheme[s]," not enhancements. (*People v. Anderson* (2009) 47 Cal.4th 92, 102; *Romero, supra,* 13 Cal.4th at pp. 526-527.)

This case is unlike *People v. Wilson* (2008) Cal.4t758, upon which the People rely, where the trial court's reliance on the vulnerability of the victim without a jury determination was harmless error. There, the defendant raped the victim after taking her "to an isolated place with her six-month-old baby in the car. Her other two children and their father . . . were being held at gunpoint in defendant's house. [The victim] knew defendant had already shot [her boyfriend's brother] and that his confederates were torturing and would probably kill him. She understandably testified she was afraid for her life." (*Id.* at p. 813.)

Here, without diminishing the trauma imposed on I.M. in count 1, she was propositioned on a public bus with others present. If the jury had been presented with the issue, it *might* have found that I.M. was "particularly vulnerable" pursuant to rule 4.421(a)(3). But "we cannot conclude with any degree of confidence, much less beyond a reasonable doubt, that the jury would have [so] found." (*People v. Sandoval* (2007) 41 Cal.4th 825, 841 [lack of jury finding regarding victim vulnerability and other aggravating factors not harmless].)

### Senate Bill No. 81

On October 8, 2021, during the pendency of this appeal, the Governor signed Senate Bill No. 81 (2021-2022 Reg. Sess.), which amended section 1385, effective January 1, 2022

(Stats. 2021, ch. 721, § 1). We requested and received supplemental briefing discussing the application of Senate Bill No. 81 to this case.

Senate Bill No. 81 added subdivision (c)(1) to section 1385 to provide: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." It also added subdivision (c)(2), which provides that "the court shall consider and afford great weight to evidence offered by the defendant to prove" various "mitigating circumstances . . . . Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." Among the listed mitigating circumstances are: "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed. [¶] (D) The current offense is connected to mental illness. [¶] . . . [¶] (F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5. [¶] . . . [¶] (H) The enhancement is based on a prior conviction that is over five years old."

Senate Bill No. 81 provides: "This subdivision shall apply to sentencings occurring after the effective date of the act that added this subdivision." (§ 1385, subd. (c)(7).) The act was effective January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c)(2).) The parties agree that the legislation does not apply retroactively to the initial sentencing in this case, which occurred in December

16

2020.  However, Ultreras correctly contends that if this court remands the case for resentencing, the amendment would apply.

"[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)  The court is "obligated to look at the facts *and the law in effect* at the time of that resentencing." (*People v. Walker* (2021) 67 Cal.App.5th 198, 205, italics added.) At resentencing the court may reconsider all its discretionary sentencing choices, so long as it does not impose a total prison term greater than the original sentence.  (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258-1259.)

### DISPOSITION

The sentence is vacated and the matter is remanded for resentencing consistent with Penal Code section 1170, as amended by Senate Bill No. 567, and Penal Code section 1385, as amended by Senate Bill No. 81.  After resentencing, the clerk of the court shall prepare an amended abstract of judgment to reflect the new sentence and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:



YEGAN, Acting P. J.                    PERREN, J.


17

Michele M. Castillo, Judge

Superior Court County of Ventura

_____

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.